# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) JENNIFER SCOTT CALLAWAY,** | ) | |
| **As parent and next friend of D.C.,** | ) | |
| **a minor child,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.  21-CV-051-SPS** |
| | ) | |
| **(1) INDEPENDENT SCHOOL DISTRICT** | ) | |
| **NO. 1 OF OKMULGEE COUNTY a/k/a** | ) | |
| **OKMULGEE PUBLIC SCHOOLS,** | ) | |
| **a Political Subdivision of the State of** | ) | |
| **Oklahoma;** | ) | |
| **(2) STEPHANIE LEE; and** | ) | |
| **(3) DALAWNA BRENT;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT OKMULGEE SCHOOL DISTRICT'S
## PARTIAL MOTION TO DISMISS
## WITH COMBINED BRIEF IN SUPPORT

Respectfully Submitted,

Kent B. Rainey, OBA No. 14619
M. Scott Major, OBA No. 33957
Emily C. Krukowski, OBA No. 32038
ROSENSTEIN, FIST & RINGOLD
525 South Main Street, Suite 700
Tulsa, Oklahoma 74103-4508
918-585-9211
918-583-5617 (Facsimile)
borainey@rfrlaw.com
scottmajor@rfrlaw.com
ekrukowski@rfrlaw.com

*Attorneys for Defendants*

**Date:  March 18, 2021**

# **TABLE OF CONTENTS**

DEFENDANT OKMULGEE SCHOOL DISTRICT'S PARTIAL MOTION TO DISMISS WITH COMBINED BRIEF IN SUPPORT ............................................. 1

Introduction ...................................................................................... 1

Arguments and Authorities ............................................................. 2

Proposition I .................................................................................... 2

        The Gravamen of Plaintiff's Claims Concern a FAPE and Require Exhaustion of the IDEA's Administrative Remedies

Proposition II .................................................................................. 7

        Plaintiff's Federal Claims Do Not Fall Within One of the Limited Exceptions to the Exhaustion Requirement

Proposition III ................................................................................. 10

        Plaintiff's Fourteenth Amendment Claims Brought Under 42 U.S.C. § 1983 Must be Dismissed

        A.    Plaintiff Has Failed to State a Claim for an Equal Protection Violation .................................................................... 10

        B.    Plaintiff's *Monell* Claims Against the School District Fail as a Matter of Law ............................................. 12

Proposition IV ................................................................................ 14

        Plaintiff Has Failed to State a Prima Facie Case Under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act

        A.    Plaintiff's Complaint Does Not State a Plausible Claim that D.C. Was Discriminated Against or Denied Services by the School District Because of His Disability ................................. 15

        B.    Plaintiff Does Not State a Plausible Claim That the Incident Involving D.C. Occurred Because He Was Disabled ................................................................... 17

Proposition V ................................................................................... 19

    Plaintiff Fails to State a Claim for Negligence Against the School
    District Because There is no Private Right of Action Under the
    School Safety and Bullying Prevention Act

Proposition VI ................................................................................. 22

    Plaintiff Fails to State a Claim for Negligent Hiring, Training,
    Supervision, and Retention Against the School District

Proposition VII ............................................................................... 23

    The Plaintiff is Not Entitled to Recover Punitive Damages
    Against the School District

Conclusion ....................................................................................... 24

Certificate of Service ....................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................. 1, 2

*Association for Cmty. Living v. Romer*
992 F.2d 1040 (10th Cir. 1993) ........................................... 6, 7, 8

*Barnes v. Gorman*
536 U.S. 181 (2002) .................................................................. 24

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................... 1, 16

*Bryson v. Gonzales*
534 F.3d 1282 (10th Cir. 2008) ................................................... 2

*Carroll v. Lawton Indep. Dist. No. 8*
805 F.3d 1222 (10th Cir. 2015) ............................................... 6, 7

*Charlie F. ex rel. Neil F. v. Bd. of Educ.*
98 F.3d 989 (7th Cir. 1996) ........................................................ 9

*City of Los Angeles v. Heller*
475 U.S. 796 (1986) .................................................................. 13

*City of Newport v. Fact Concerts, Inc.*
453 U.S. 247 (1981) .................................................................. 24

*Cohon ex rel. Bass v. New Mexico Dept. of Health*
646 F.3d 717 (10th Cir. 2011) ............................................. 15, 16

*Cowdrey v. Eastborough*
730 F.2d 1376 (10th Cir. 1984) ................................................ 14

*Cudjoe v. Independent Sch. Dist. No. 12*
297 F.3d 1058 (10th Cir. 2002) ............................................. 6, 7

*Davis v. Monroe*
526 U.S. 629 (1999) .................................................................. 17

*Dill v. City of Edmond*
    155 F.3d 1193 (10th Cir.1998) ................................................................. 24

*Fry v. Napoleon Cmty. Schs.*
    137 S.Ct. 743 (2017) ....................................................................... 2, 3, 4

*Graves v. Thomas*
    450 F.3d 1215 (10th Cir. 2006) ................................................................ 13

*Grubs v. Bailes*
    445 F.3d 1275 (10th Cir. 2006) ........................................................... 10, 11

*Higginbottom v. Mid-Del School District*
    2016 U.S. Dist. LEXIS 30015 (W.D. Okla. Mar. 9, 2016) ....................... 23

*Higgins v. Saavedra*
    2018 U.S. Dist. Lexis 10518 (D.N.M. Jan. 23, 2018) ............................... 11

*Hoffman v. Saginaw Pub. Sch.*
    2012 WL 2450805 (E. D. Mich. June 27, 2012) ................................. 17, 18

*Jackson v. Oklahoma City Public Schools*
    333 P.3d 975 (Okla. Civ. App. 2014) ................................................. 22, 23

*Jennings v. City of Stillwater*
    383 F.3d 1199 (10th Cir. 2004) ........................................................... 11, 12

*Jicarilla Apache Nation v. Rio Arriba Cnty.*
    440 F.3d 1202 (10th Cir. 2006) ................................................................ 11

*Johnson by Johnson v. Thompson*
    971 F.2d 1487 (10th Cir. 1992) ................................................................ 15

*KT & G Corp. v. Attorney General of State of Okla.*
    535 F.3d 1114 (10th Cir. 2008) ................................................................ 10

*Lakeside Builders, Inc.  v.  Planning Bd. of the Town of Franklin*
    2002 WL 31655250 ................................................................................... 12

*M.L. v. Federal Way Sch. Dist.*
    394 F.3d 634 (9th Cir. 2005)................................................................... 8, 9

*McQueen v. Colorado Springs Sch. Dist. No. 11*
    488 F.3d 868 (10th Cir. 2007) ..................................................... 6

*Miller ex rel. S.M. v. Board of Educ. of Albuquerque Pub. Sch.*
    565 F.3d 1232 (10th Cir. 2009) ................................................. 15

*Mimics, Inc. v. Village of Angel Fire*
    394 F.3d 836 (10th Cir. 2005) ................................................... 11

*Monell v. Department of Soc. Servs.*
    436 U.S. 658 (1978) ........................................................... 12, 13

*Muskrat v. Deer Creek Pub. Schs.*
    715 F.3d 775 (10th Cir. 2013) ..................................................... 7

*Myers v. Okla. Cnty. Bd. of Comm'rs*
    151 F.3d 1313 (10th Cir. 1998) ................................................. 13

*Najera v. Indep. Sch. Dist. Of Stroud No. I-54*
    60 F. Supp. 3d 1202 (W.D. Okla. 2014) ..................................... 24

*Nordlinger v. Hahn*
    505 U.S. 1, 10 (1992) ............................................................ 10

*Padilla v. School Dist. No. 1*
    233 F.3d 1268 (10th Cir. 2000) ................................................... 6

*Penrod v. Zavaras*
    94 F.3d 1399, 1406 (10th Cir. 1996) ......................................... 10

*Robbins v. Oklahoma*
    519 F.3d 1242, 1250 (10th Cir. 2008) ......................................... 2

*S.S. v. Eastern Kentucky Univ.*
    532 F.3d 445, 454 (6th Cir. 2008) ............................................. 17

*Storie v. Independent Sch. Dist., No. 13*
    834 F. Supp. 2d 1305 (E.D. Okla. 2011) ....................... 10, 11, 12

*Tennessee v. Lane*
    541 U.S. 509 (2004) ............................................................... 10

*Urban v. Jefferson County Sch. Dist. R-1*
    89 F.3d 720 (10th Cir. 1996) .................................................... 7, 8

*Village of Willowbrook v. Olech*
    528 U.S. 562 (2000) ................................................................ 10

*Wellman v. Butler Area School District*
    877 F.3d 125 (3rd Cir. 2017) ..................................................... 4

*Welsh v. City of Tulsa*
    977 F.2d 1415 (10th Cir. 1992) ................................................ 10

*Welty v. Martinaire of Okla., Inc.*
    867 P.2d 1273 (Okla. 1994) ..................................................... 20

*Werth v. Board of Dirs. of the Pub. Sch. of Milwaukee*
    472 F. Supp. 2d 1113 (E.D. Wis. 2007) .................................... 17

*Young v. Okla. City Pub. Sch.*
    2013 WL 6567144, *4 (W.D. Okla. Dec. 13, 2013) .................... 20

**Statutes**

OKLA. STAT. tit. 51, § 152.1 ................................................................. 21

OKLA. STAT. tit. 51, § 154(C) ............................................................... 24

OKLA. STAT. tit. 51, § 155 .................................................................... 21

OKLA. STAT. tit. 51, § 155(4) ............................................................... 21

OKLA. STAT. tit. 51, § 155(5) ......................................................... 22, 23

OKLA. STAT. tit. 51, §§ 152(11)(b) ...................................................... 21

OKLA. STAT. tit. 70, § 24-100.3(B) ...................................................... 20

OKLA. STAT. tit. 70, §§ 24-100.4(A), 24-100.5(A)-(B) ......................... 21

**Other Authorities**

34 C.F.R. § 300.101 ............................................................................... 5

34 C.F.R. § 300.17 ................................................................................. 5

34 C.F.R. § 300.39(a) ............................................................................ 5

34 C.F.R. § 300.34 ................................................................................. 9

34 C.F.R. §§ 300.8(a) ............................................................................ 5

20 U.S.C. § 1415(l) ............................................................................ 3, 4

20 U.S.C. §§ 1401 et seq. ...................................................................... 2

29 U.S.C. § 794(a) ............................................................................... 14

29 U.S.C. 790 et seq. ............................................................................. 3

42 U.S.C. § 12132 ............................................................................... 14

42 U.S.C. § 1983 .......................................................................*in passim*

42 U.S.C. 12101 et seq. ...................................................................... 3

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 16

Fed. R. Civ. P. 12(b)(1) ..................................................................... 1

### **DEFENDANT OKMULGEE SCHOOL DISTRICT'S PARTIAL MOTION TO DISMISS WITH COMBINED BRIEF IN SUPPORT**

Defendant Independent School District No. 1 of Okmulgee County, Oklahoma, commonly known as the Okmulgee Public Schools (the "School District"), and pursuant to FED. R. CIV. P 12(b)(1) & (6), moves to dismiss certain of the claims asserted by the Plaintiff Jennifer Scott Callaway, as parent and next friend of D.C., a minor child (the "Plaintiff"). The court lacks subject matter jurisdiction over Plaintiff's federal claims because the Plaintiff has failed to exhaust her administrative remedies available under the Individuals with Disabilities Education Act ("IDEA"). Assuming exhaustion is not required, Plaintiff's Section 1983 claim, Section 504, and ADA claims fail to state a claim upon which relief can be granted, as well as Plaintiff's negligence claims and her claim for punitive damages. In support of its Motion, the School District shows the Court as follows:

### **INTRODUCTION**

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the U.S. Supreme Court ruled that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the U.S. Supreme Court explained that a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). The U.S. Supreme Court made clear that this requirement can only be satisfied by pleading sufficient **facts**, emphasizing that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* (citation omitted). Indeed, the principle that courts must accept all of the allegations in a complaint as true does not apply to "legal conclusions," "bare assertions," or "conclusory" allegations. *Id.* at 678-81. Only "well-pleaded factual allegations" are assumed to be true. *Id.* at 679.

The Tenth Circuit has observed that this pleading requirement serves two purposes. "First, it ensures that defendants know 'the actual grounds of the claim against them,' and can therefore prepare a defense." *Bryson v. Gonzales*, 534 F.3d 1282, 1287 (10th Cir. 2008) (citation omitted). The Tenth Circuit has emphasized that "it is particularly important" that a pleading "make clear exactly who is alleged to have done what to whom." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis omitted) (citation omitted). "Second, it avoid[s] ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Bryson*, 534 F.3d at 1287 (internal quotations and citations omitted). Although federal pleading standard are liberal, notice pleading "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

## ARGUMENTS AND AUTHORITIES

## I.

### THE GRAVAMEN OF PLAINTIFF'S CLAIMS CONCERN A FAPE AND REQUIRE EXHAUSTION OF THE IDEA'S ADMINISTRATIVE REMEDIES

In *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017), the U.S. Supreme Court provided an extensive discussion of the Individuals with Disabilities Education Act (the "IDEA"), which is found at 20 U.S.C. §§ 1401 *et seq.*:

[the IDEA] offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities. As defined in the Act, a FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction. An eligible child, as this Court has explained, acquires a 'substantive right' to such an education once a State accepts the IDEA's financial assistance. Under the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE. Most notably, the IEP documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately toward [those] goals.'

*Id.* at 748-49 (internal citations omitted).

The IDEA contains a carefully drafted exhaustion requirement. This requirement, found at 20 U.S.C. § 1415(l) ("Section 1415(l)"), reads:

> (l) **Rule of construction.** Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. 790 et seq.], or other Federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.**

*Id.* (emphasis added).

Thus, a plaintiff bringing suit under the United States Constitution, the ADA, the Rehabilitation Act, or similar laws "must in certain circumstances—that is, when 'seeking relief that is also available under' the IDEA—first exhaust the IDEA's

administrative procedures." *Fry*, 137 S. Ct. at 750. "Section 1415(l) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id*. at 755.

To determine when a FAPE is the gravamen of a plaintiff's claim, the U.S. Supreme Court has adopted a two-question test:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?

*Id.* at 756 (emphasis omitted). When the answer to those two questions is no, "then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim." *Id.* at 756.[1]

In the case at bar, it is pleaded that minor D.C. is a student with a disability and is provided educational services by the School District in accordance with an IEP developed pursuant to the IDEA. Complaint, ¶¶ 2, 4. Plaintiff alleges that the School District failed to comply with the provisions of D.C.'s IEP when an adult did not accompany D.C. when he was toileting. This failure permitted a fellow student to photograph D.C. while in the

---

[1] Following *Fry*, federal courts have concluded that *Fry* requires them to "review both the entire complaint and each claim to determine if the plaintiff seeks relief from the denial of a FAPE." *Wellman v. Butler Area School District*, 877 F.3d 125, 133 (3rd Cir. 2017).

bathroom, and D.C. was injured when the photographs were shared with other students. Complaint, ¶¶ 35-39, 46-48. Thus, the answer to the first question of the *Fry* test is "No." It is only due to D.C. attending the School District and having an IEP in place that the School District was responsible for having an adult accompany D.C. while he was toileting at school.

With regard to *Fry's* second question, the answer is also "No." The obligation to provide an IEP only arises with regard to a student with a disability.  *See* 34 C.F.R. § 300.8(a) (defining a child with a disability); § 300.17 (defining an IEP as a written statement for a child with a disability); § 300.39(a) (defining special education as specially designed instruction); § 300.39(a)(3) (defining specially designed instruction). There is no corresponding responsibility for the School District to develop an IEP for a parent or visitor. *See* 34 C.F.R. § 300.101 (obligating the provision of a FAPE to children between the ages of 3 and 21, inclusive).

Any lingering doubt as to whether the Plaintiff's Complaint concerns a FAPE is dispelled by the wording of the Complaint itself, which premises all of the Plaintiff's federal claims on the School District's alleged failure to comply with the provisions of D.C.'s IEP. Complaint, ¶ 85 (42 U.S.C § 1983 Claim – premising liability on the School District "failing to ensure that the explicit requirements of D.C.'s IEP were being followed."); ¶ 105 (ADA Claim – "Defendant(s) were on notice that he needed those ASD specific services but did not provide those services. Finally, the services he needed were available as a reasonable accommodation."); ¶ 117 (Section 504 Claim – premising liability on the School District "failing to adequately staff the special education classroom

and not provid[ing] D.C. the adult aide he is required, in violation of D.C.'s documented

needs."); ¶ 121 (Section 504 Claim - premising liability on the School District "den[ying]

services, programs and activities to D.C.[.]").

The Tenth Circuit has repeatedly stated that there are multiple reasons parties

should exhaust their administrative remedies under the IDEA:

> (1) permitting the exercise of agency discretion and expertise on issues
> requiring these characteristics; (2) allowing the full development of
> technical issues and a factual record prior to court review; (3) preventing
> deliberate disregard and circumvention of agency procedures established by
> Congress; and (4) avoiding unnecessary judicial decisions by giving the
> agency the first opportunity to correct any error.

*McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007)

(citing *Ass'n for Cmty. Living v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993); *see also*

*Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1065 (10th Cir. 2002) (same).

Additionally, "[w]here the IDEA's ability to remedy a particular injury is unclear,

exhaustion should be required in order to give educational agencies an initial opportunity

to ascertain and alleviate the alleged problem." *Carroll v. Lawton Indep. Dist. No. 8*, 805

F.3d 1222, 1227 (10th Cir. 2015) (quoting *Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268,

1274 (10th Cir. 2000)).

Accordingly, the Plaintiff is required to comply with the provisions of Section

1415(l) and exhaust the IDEA's administrative remedies before bringing her federal

claims against the School District. Having failed to do so or allege compliance therewith,

all of the Plaintiff's federal claims against the School District, whether premised on the

United States Constitution, Section 504 of the Rehabilitation Act, or the Americans with

Disabilities Act, should be dismissed.[2]

## II.

### PLAINTIFF'S FEDERAL CLAIMS DO NOT FALL WITHIN ONE OF THE LIMITED EXCEPTIONS TO THE EXHAUSTION REQUIREMENT

The Plaintiff also appears to argue that her claims fall within the exception to

exhaustion, as exhaustion would be futile or inadequate. <u>Complaint</u>, ¶¶ 12-16. Whether

exhaustion is required in a particular case is a question of law for a court, and the party

seeking to avoid the exhaustion requirement has the burden of demonstrating entitlement

to the exception. *See Cudjoe*, 297 F.3d at 1063 n.6. The Tenth Circuit has recognized

three exceptions to exhaustion: (1) when administrative remedies would be futile, (2)

when they would fail to provide adequate relief, or (3) when "an agency has adopted a

policy or pursued a practice of general applicability that is contrary to the law." *Urban v.*

---

[2]     Under the Tenth Circuit's controlling precedent, this Court lacks subject matter jurisdiction to hear either of the Plaintiff's federal law claims. *See Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 783-85 (10th Cir. 2013) (discussing the *Cudjoe* decision and noting how the Tenth Circuit has treated the exhaustion requirement as jurisdictional). Moreover, even if this Court concludes that failure to exhaust should be considered an affirmative defense rather than a jurisdictional defect, the Plaintiff's failure to exhaust her administrative claims under the IDEA prior to bringing suit shows that both her constitutional, ADA, and Section 504 claims must be dismissed for failure to state a claim upon which relief can be granted. As the Tenth Circuit emphasized in *Carroll*, where the issue is timely raised, the result is the same whether failure to exhaust is treated as a jurisdictional defect or an affirmative defense. *Carroll*, 805 F.3d at 1230, n.4 (citations omitted).

*Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996) (quoting *Romer*, 992 F.2d at 1044).

In *Urban*, the Tenth Circuit explained that administrative remedies are generally futile or inadequate "when plaintiffs allege 'structural or systematic failure and seek systemwide reforms.'" *Urban*, 89 F.3d at 725 (citation omitted). The Tenth Circuit in *Romer* contrasted a request for structural reform with the claims presented in the case before it, which dealt only with "a single component" of the Colorado Department of Education's program. *Romer*, 992 F.2d at 1044. To fall within the third exception, the Tenth Circuit has explained that "[a] [school district] must have adopted a policy of general applicability contrary to law which 'thereby renders agency expertise and the factual development of an administrative record less important.'" *Urban*, 89 F.3d at 725 (citation omitted). Likewise, in *Romer*, the Tenth Circuit stressed that a plaintiff "does not necessarily fall within the third exception by challenging a policy of general applicability . . . . The plaintiffs must still show that the policy is contrary to law and that the underlying purposes of exhaustion would not be served." *Romer*, 992 F.2d at 1044 (citation omitted).

Exhaustion would not be futile or inadequate in this case. Whether the harassment of D.C. was severe enough to alter the condition of his education is a matter concerning a FAPE. *See M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634, 650-51 (9th Cir. 2005) (Recognizing that "[i]f a teacher is deliberately indifferent to teasing of a disabled child and the abuse is so severe that the child can derive no benefit from the services that he or she is offered by the school district, the child has been denied a FAPE.") (citations

omitted); *Charlie F. ex rel. Neil F. v. Bd. of Educ.*, 98 F.3d 989, 990-93 (7th Cir. 1996) (holding that, "at least in principle relief is available under the IDEA" when a teacher invited her pupils to express their complaints about a disabled student which led to humiliation, fistfights, mistrust, loss of confidence and self-esteem, and disruption of his educational progress). In her Complaint, the Plaintiff asserts that D.C. has suffered psychological damages, emotional distress, his future relationships have been negatively affected, and he has lost time from school. *See* <u>Complaint</u>, ¶¶ 64, 77, 87, 99, 109, 124. One of the reasons for exhaustion of administrative remedies is to determine if the alleged bullying suffered by D.C. was sufficiently severe or pervasive that it altered the condition of his education. If this is the case, a remedy exists under the IDEA because psychological services and counseling services are available as related services to a child with a disability. *See* 34 C.F.R. § 300.34 (defining related services).

Furthermore, the Plaintiff does not sufficiently allege structural or systematic failures in the School District's special education program. Instead, the allegations focus on the specific conduct involving D.C. Like in *Romer*, the Plaintiff's allegations focus on the educational services provided to D.C. in connection with his special education program at the School District. While the Plaintiff makes some general allegations regarding the School District's systematic failures regarding the implementation of IEPs, those general allegations do not demonstrate any alleged structural or systematic failures.

There is simply nothing in the Complaint to indicate that the underlying purposes of exhaustion would not be served, and the Plaintiff has failed to plead and show that she has exhausted her administrative remedies under the IDEA.

# III.

## PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS BROUGHT UNDER 42 U.S.C. § 1983 MUST BE DISMISSED

### A.     Plaintiff Has Failed to State a Claim for an Equal Protection Violation

Plaintiff's third cause of action asserts that D.C.'s equal protection rights were violated by the School District, and its employees, Defendants Stephanie Lee and Dalawna Brent. Complaint, ¶¶ 78-99. Generally, "[a]n equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citations omitted). Equal protection "does not forbid classifications[,]" but "[i]t simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citations omitted); *see also Storie v. Indep. Sch. Dist., No. 13*, 834 F. Supp. 2d 1305, 1309 (E.D. Okla. 2011) ("[T]he Constitution's Equal Protection clause is implicated 'when the state treats two groups, or individuals, differently.'") (quoting *KT & G Corp. v. Attorney General of State of Okla.*, 535 F.3d 1114, 1136 (10th Cir. 2008)).

Disabled individuals are not a suspect class for purposes of an equal protection challenge. *See Tennessee v. Lane*, 541 U.S. 509, 522 (2004); *Welsh v. City of Tulsa*, 977 F.2d 1415, 1420 (10th Cir. 1992). Thus, it appears that the Plaintiff is asserting an equal protection claim on a "class of one" theory. *Village of Willowbrook v. Olech*, 528 U.S. 562, 563-65 (2000). To succeed on such a claim, the Tenth Circuit has required that a plaintiff establish that he was intentionally treated differently from those similarly

situated. *See Grubs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006). The Tenth Circuit

has also required a plaintiff establish that the "the official action was objectively

irrational and abusive." *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1211

(10th Cir. 2006) (emphasis omitted). The Tenth Circuit has noted that a "multiplicity of

relevant (nondiscriminatory) variables requires plaintiff to provide compelling evidence

of other similarly situated persons who were in fact treated differently." *Jennings v. City

of Stillwater*, 383 F.3d 1199, 1215 (10th Cir. 2004) (citation omitted). Moreover, the

Tenth Circuit has also required that the claim "allege some level of animosity or ill will."

*Storie*, 834 F. Supp. 2d at 1309-10 (citing *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d

836, 849 (10th Cir. 2005)).

In asserting this claim, the Plaintiff makes no factual allegations demonstrating

that D.C. was treated differently from those who were similarly situated. This is a heavy

burden and is "exceedingly difficult" in a class of one context. *Higgins v. Saavedra*, No.

CIV 17-0234 RB/LF, 2018 U.S. Dist. LEXIS 10518, at *15-16 (D.N.M. Jan. 23, 2018)

(citations omitted). Courts have noted the difficulty in cases involving students in an

educational setting. The Tenth Circuit in *Jennings* called attention to this language from

the District of Massachusetts:

> It might be suggested that all applicants should be considered "similarly
> situated" simply because they had all made requests for waivers of the
> dead-end street length regulation. But that is so broad a definition of
> "similarly situated" that it is not useful for equal protection analysis; it
> could be applied to any group of applicants where, looking back, one could
> see that there had been some who succeeded and some who failed. For
> example, high school students whose applications to a particular college
> were rejected could allege that they were being treated differently from the
> "similarly situated" fellow students whose applications were accepted. In

the example, one would want to know a good deal more about the merits of individual applicants before deciding who was similarly situated to whom.

*Jennings*, 383 F.3d at 1214 (quoting *Lakeside Builders, Inc. v. Planning Bd. of the Town of Franklin*, 2002 U.S. Dist. LEXIS 4725, at *8 (D. Mass. Mar. 21, 2002)). In light of this, Plaintiff's general equal protection claims fail to meet the heavy burden required in a "class of one" equal protection claim. Plaintiff has not plead anything to suggest that D.C. was treated differently than similarly situated individuals.

Second, although the Plaintiff contends that the School District acted with deliberate indifference, knew that the alleged conduct was unjustified, and tacitly encouraged the acts/or omissions related to the incident involving D.C., the Complaint contains no factual support to suggest that the School District or its employees acted with animosity or ill-will towards D.C. This fails to sufficiently satisfy the intent requirement necessary for an equal protection violation by the School District. *See Storie*, 834 F. Supp. 2d at 1309-10.

### B. Plaintiff's *Monell* Claims Against the School District Fails as a Matter of Law

Plaintiff alleges that the School District is responsible for the violation of D.C.'s constitutional rights under *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978). Complaint, ¶¶ 88-99. The Plaintiff alleges that the School District "has and/or had unconstitutional customs or policies of allowing sexual assaults to occur to [School District] special needs students," and includes a generalized list of what the alleged polices, practices, and/or customs are. *Id.* at ¶ 93. The Plaintiff alleges that the School District "tacitly encouraged, ratified, and/or approved of the acts and/or omissions

alleged herein, knew that such conduct was unjustified and would result in violations of constitutional rights, and evinced deliberate indifference to the serious needs of special needs students." *Id.* at ¶ 95. The Plaintiff also alleges that the School District's "policies and/or practices constituted disparate treatment of special needs students and had a disparate impact on special needs students." *Id.* at ¶ 96.

It is well-settled that liability under 42 U.S.C. § 1983 ("Section") may not be imposed on a governmental entity on a *respondeat superior* basis. *Monell*, 436 U.S. at 690-91. As the U.S. Supreme Court has determined:

> We conclude, therefore, that a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983.

*Id.* at 694. To impose liability on a municipality under Section 1983, a plaintiff must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694)).

First, the Plaintiff's *Monell* claim fails because the Plaintiff cannot establish that D.C. was deprived of a constitutional right. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) ("[A] municipality may not be liable where there was no underlying constitutional violation by any of its officers.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)). As explained above, Plaintiff has failed to allege that D.C. suffered a

constitutional violation by the School District. Second, Plaintiff has not sufficiently plead that the School District's conduct was based on a well-settled policy or practice. While the Complaint contains conclusory allegations in Paragraph 93 regarding the alleged "policy or practice," these general allegations contradict the more specific incident involving D.C., which indicate that it was an isolated incident because the School District's special education department was short-staffed. <u>Complaint</u>, ¶¶ 40-49, 93. An isolated incident does not sufficiently establish a custom, policy, or practice on the part of the School District. *See Cowdrey v. Eastborough*, 730 F.2d 1376, 1378-79 (10th Cir. 1984). Thus, Plaintiff's Section 1983 municipal liability claim must be dismissed.

**IV.**

**PLAINTIFF HAS FAILED TO STATE A PRIMA FACIE CASE
UNDER SECTION 504 OF THE REHABILITATION ACT AND
TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

Plaintiff asserts as her fourth and fifth causes of action claims under Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132. Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Given that the

language of Title II of the ADA and Section 504 are substantially the same, courts apply the same analysis to both. *Cohon ex rel. Bass v. New Mexico Dept. of Health*, 646 F.3d 717, 725-26 (10th Cir. 2011); *Miller ex rel. S.M. v. Board of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) ("Because these provisions involve the same substantive standards, we analyze them together") (citation omitted).

> **A.    Plaintiff's Complaint Does Not State a Plausible Claim that D.C. Was Discriminated Against or Denied Services by the School District Because of His Disability**

Plaintiff's *prima facie* Section 504 case must set out four elements, namely that (1) D.C. is handicapped under the Rehabilitation Act, (2) he is otherwise qualified for the benefit sought, (3) that he was discriminated against solely because of his handicap, and (4) the program receives federal assistance. *Johnson ex rel. Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992) (citations omitted). Similarly, in order to establish a *prima facie* case under the ADA, the Plaintiff must allege that (1) D.C. is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of the School District's services, and (3) such exclusion was based on his disability. *Cohon*, 646 F.3d at 725 (citation omitted). Thus, to prevail under either of these claims, the Plaintiff must assert well-pleaded facts showing that the alleged discrimination D.C. suffered at the hands of the School District was because of his disability—something the Complaint does not do.

Nowhere within the Complaint are there any facts alleged that School District personnel actively or affirmatively prevented D.C. from being involved in educational

programs offered by the School District because of his disability, *e.g.*, D.C. was not permitted to attend a particular class because he was disabled. Rather, Plaintiff's Complaint simply contains conclusory allegations that D.C. was discriminated against. The Plaintiff does not plead any facts showing that the School District investigated, treated, or responded to alleged similar incidents involving non-disabled students being photographed in the bathroom differently than how the matter with D.C. was handled. Simply, the Plaintiff has not alleged any facts that shows a link between the School District's response to the alleged incident involving D.C. and D.C.'s disability.

Conclusory statements are not enough to survive a motion to dismiss for failure to state a claim. Rather, a plaintiff must provide enough facts to state a claim for relief that is plausible on its face and a court need not accept conclusory allegations without supporting factual averments. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 544; *see also Cohon*, 646 F.3d at 724 ("The complaint must set forth 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'") (citation omitted). Because the Complaint is devoid of any facts that make it plausible that D.C. was denied participation in any School District programs on the basis of his disability, or that the School District responded to the alleged incident involving D.C. in a manner that was because of D.C.'s disability, the Plaintiff's claims of violation of Section 504 and the ADA should be dismissed.

### B. Plaintiff Does Not State a Plausible Claim That the Incident Involving D.C. Occurred Because He Was Disabled

The incident involving D.C. concerns a peer-on-peer disability-based harassment claim, as D.C. was allegedly injured after another student took an inappropriate picture of him while he was using the restroom. School district liability for peer-on-peer disability-based harassment under Section 504 and the ADA has not been directly addressed by the U.S. Supreme Court or the Tenth Circuit. However, courts facing such claims have applied the peer-on-peer sexual harassment elements identified in *Davis v. Monroe*, 526 U.S. 629 (1999), to disability-based harassment or discrimination claims. *See S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 454 (6th Cir. 2008); *Werth v. Board of Dirs. of the Pub. Sch. of Milwaukee*, 472 F. Supp. 2d 1113, 1128 (E.D. Wis. 2007); *Hoffman v. Saginaw Pub. Sch.*, No. 12-10354, 2012 U.S. Dist. LEXIS 88967, at \*36-43 (E.D. Mich. June 27, 2012). These courts have held that in order to state a claim for relief under Section 504 or the ADA for peer-on-peer disability-based harassment, the complaint must allege facts plausibly suggesting:

> (1) the plaintiff is an individual with a disability, (2) he or she was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment, (4) the defendant knew about the harassment, and (5) the defendant was deliberately indifferent to the harassment.

*Eastern Kentucky Univ.*, 532 F.3d at 454 (citations omitted).

Plaintiff cannot establish the second, third, fourth, and fifth elements—namely that D.C. was harassed based on his disability, that the harassment was severe enough to alter

the condition of D.C.'s education, and that School District personnel were aware of and deliberately indifferent to this disability-based harassment. The Complaint also fails to provide any facts that demonstrate disability based, discriminatory animus, was the basis for the harassment that D.C. allegedly suffered at the hands of another student while D.C. was using the restroom. In *Hoffman*, the district court was confronted with the issue of whether certain student-to-student statements were sufficient to state a claim under Section 504 or the ADA. In granting the school district's motion to dismiss, the district court noted that although the complaint contained allegations that the student was teased about his disability, it did not provide facts sufficient to demonstrate that the harassment occurred because of the student's disability. *Hoffman*, 2012 U.S. Dist. LEXIS 88967, at *36-43.

Here, Plaintiff asserts that D.C. was photographed by another student while using the restroom. Complaint, ¶¶ 40-49. This requires making the assumption that D.C. was photographed because he was disabled. However, the Complaint is devoid of any facts suggesting that the alleged photograph was taken because D.C. is a child with a disability. Any student could have been the victim of having an inappropriate photograph taken. Plaintiff has further failed to adequately plead that this single incident was severe enough to alter the condition of D.C.'s education. Finally, the Plaintiff has failed to assert that the School District, once made aware of this incident, was deliberately indifferent. Indeed, the Complaint acknowledges just the opposite. When made aware of the incident, the School District investigated the existence of the photographs, contacted the

Plaintiff, and reported the matter to the Okmulgee Police Department. <u>Complaint</u>, ¶¶ 50-53.

Thus, having failed to plead such facts, the Plaintiff cannot assert that the School District was deliberately indifferent to disability-based harassment directed against D.C. by one of his peers. As such, the Plaintiff's Section 504 and ADA claims should be dismissed.

## V.

### PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE AGAINST THE SCHOOL DISTRICT BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE SCHOOL SAFETY AND BULLYING PREVENTION ACT

In her first cause of action, Plaintiff asserts a negligence claim against the School District. This claim is based on allegations that the School District "breached its duties to D.C. by violating of [*sic*] one or more Oklahoma Statutes, including, but not limited to the Oklahoma Bullying Prevention Act 7(0 [*sic*] O.S. § 24-1004)." <u>Complaint</u>, ¶ 68. The Plaintiff also asserts that the School District "breached these duties by failing to properly protect D.C., failing to ensure that its agents were appropriately supervising students, and by allowing D.C., a special needs student, to go to the bathroom unsupervised with older students." *Id.* at ¶ 67. To the extent that Plaintiff's first cause of action asserts a negligence claim based on alleged violations of the "School Safety and Bullying Prevention Act" ("SSBPA"), it fails to state a claim upon which relief can be granted because there is no private right of action for violation of the SSBPA.

The SSBPA contains no language that expressly creates a private right of action. Furthermore, under Oklahoma law, a private right of action can be implied from a statute that does not expressly create such a right only if the following elements are met:

    (1)    the plaintiff is one of the class for whose especial benefit the statute was created;

    (2)    some indication of legislative intent, explicit or implicit, suggests that the Legislature wanted to create a private remedy and not to deny one; and

    (3)    implying a remedy for the plaintiff would be consistent with the underlying purpose of the legislative scheme.

*Welty v. Martinaire of Okla., Inc.*, 867 P.2d 1273, 1276 (Okla. 1994).

Here, the plain language of the SSBPA establishes that the Plaintiff cannot satisfy the second or third elements of this analysis. The text of the SSBPA evinces no indication of legislative intent to create a private remedy for violations of that statute. To the contrary, Section 24-100.3(B) of the SSBPA specifically provides that "[n]othing in this act shall be construed to impose a specific liability on any school district," which demonstrates a specific legislative intent not to create a private remedy by enacting the SSBPA. OKLA. STAT. TIT. 70, § 24-100.3(B); *see also Young v. Okla. City Pub. Sch.*, No. CIV-13-633-M, 2013 U.S. Dist. LEXIS 174501, *10-11 (W.D. Okla. Dec. 13, 2013) (Dismissing student's negligence claim to the extent the claim was based on the alleged failure to adopt or enforce a policy regarding bullying, reasoning that the SSBPA "exempts any school district from liability based on the [SSBPA].").

Implying a remedy under the SSBPA would also be inconsistent with the purposes of the SSBPA. The Legislature's expressly stated purpose in enacting the SSBPA was to

require boards of education, in consultation with "safe school committees" comprised of various stakeholders such as school administrators, parents, and students, to adopt policies which address issues related to prevention and investigation of incidents of bullying.[3] OKLA. STAT. tit. 70, §§ 24-100.4(A), 24-100.5(A)-(B). Nothing in the SSBPA suggests that the legislature intended to create a statutory cause of action to make school districts liable in tort for money damages or to allow a parent to assert claims on behalf of their child based on alleged violations of the statute; indeed, the Legislature's specific admonition that the SSBPA should not be construed so as to impose liability on any school district demonstrates that the implication of a private remedy was not consistent with the purposes of that statute.

Because the SSBPA does not expressly or implicitly create a private right of action, the Plaintiff's negligence claim based on alleged violations of the statute should be dismissed for failure to state a claim upon which relief may be granted.

---

[3]  Under the reservation of sovereign immunity contained in Section 155 of the Governmental Tort Claims Act, a political subdivision such as the School District cannot be liable for a claim or loss resulting from "[a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." OKLA. STAT. tit. 51, § 155(4); *see also* OKLA. STAT. tit. 51, § 152(11)(b) (defining a school district as a political subdivision); § 152.1 (adopting the doctrine of sovereign immunity and waiver to the extent and in the manner provided in the GTCA); § 155 (reservations of sovereign immunity/exemptions from liability).

## VI.

### PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION AGAINST THE SCHOOL DISTRICT

Plaintiff's second cause of action is one for negligent hiring, training, supervision, and retention against the School District. Complaint, ¶ 75. This claim is subject to dismissal for failure to state a claim upon which relief can be granted because it is barred by the GTCA's exclusion from liability for any claim which arises out of the School District's or its employees' performance of discretionary functions.

A School District is exempt from liability if a loss or claim results from "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." OKLA. STAT. tit. 51, § 155(5). Both state and federal courts have repeatedly held that a school district's hiring, training, and supervision of school employees are discretionary functions, and claims based on alleged negligence in carrying out those functions are barred by Section 155(5).

In *Jackson v. Oklahoma City Public Schools*, 333 P.3d 975 (Okla. Civ. App. 2014), a plaintiff parent brought suit against a school district after a teacher with the district allegedly assaulted the parent's child, alleging that the school district was liable for negligently hiring, training, and supervising the teacher. *Id.* at 977. The Oklahoma Court of Civil Appeals affirmed the trial court's grant of summary judgment to the school district as to the plaintiff's negligence claims, reasoning that it is "settled" that under Section 155(5), a school district's "hiring, training, and supervising decisions are

discretionary and therefore a school may not be liable for damages resulting from those decisions." *Id.* at 979.

Similarly, in *Higginbottom v. Mid-Del School District*, No. CIV-15-1091-D, 2016 U.S. Dist. LEXIS 30015 (W.D. Okla. Mar. 9, 2016), a plaintiff who had been involved in an automotive accident with a school bus sued the defendant school district and alleged that the school district was negligent in hiring, retaining, and supervising the school bus driver. *Id.* at *3-4. The court examined numerous decisions from federal district courts in Oklahoma, noting that such courts have consistently applied the discretionary function exemption of Section 155(5) to "similar allegations of negligent hiring, supervision, and retention." *Id.* at *8-9. The court concluded that the plaintiff's allegations that the school district had negligently hired and supervised the bus driver "involve[] the same kinds of decisions that implicate policy concerns and therefore fall[] within the discretionary function exemption of [Section 155(5).]" *Id.* at *10.

Accordingly, the Plaintiff's cause of action against the School District for negligent hiring, retention, training, and supervision fails to state a claim upon which relief may be granted and should be dismissed.

## VII.

## THE PLAINTIFF IS NOT ENTITLED TO RECOVER PUNITIVE DAMAGES AGAINST THE SCHOOL DISTRICT

In the Complaint's prayer for relief, the Plaintiff alleges that she is entitled to recover punitive damages. <u>Complaint</u>, at pp. 18-19. Neither federal nor state law permit the recovery of punitive damages against a public school district.

In *Barnes v. Gorman*, 536 U.S. 181 (2002), the Court relied on Title VI in holding that punitive damages are not available under Title II of the ADA or Section 504. As the Court explained, "[b]ecause punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under [Section] 202 of the ADA and [Section] 504 of the Rehabilitation Act." *Id*. at 189.

In *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247 (1981), the Supreme Court held that "a municipality is immune from punitive damages under [Section] 1983." *Id*. at 271; *see also Dill v. City of Edmond*, 155 F.3d 1193, 1210 (10th Cir. 1998) (stating that "municipalities are not liable for punitive damages under [Section] 1983").

Likewise, punitive damages are not available under Oklahoma law. The GTCA expressly provides that punitive damages may not be recovered against a political subdivision such as the School District: "No award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages." Okla. Stat. tit. 51, § 154(C). *See also Najera v. Indep. Sch. Dist. Of Stroud No. I-54*, 60 F. Supp. 3d 1202, 1208 (W.D. Okla. 2014) (citing [Section] 154(C) and holding that "Oklahoma law bars punitive damages against municipal defendants").

## CONCLUSION

For the reasons and arguments stated and addressed herein, the School District requests that several of Plaintiff's claims in her Complaint be dismissed.

Respectfully Submitted,

ROSENSTEIN, FIST & RINGOLD

s/ Kent B. Rainey
Kent B. Rainey, OBA No. 14619
M. Scott Major, OBA No. 33957
Emily C. Krukowski, OBA No. 32038
525 South Main Street, Suite 700
Tulsa, Oklahoma 74103-4508
918-585-9211
918-583-5617 (Facsimile)
borainey@rfrlaw.com
scottmajor@rfrlaw.com
ekrukowski@rfrlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF DELIVERY

☒    I hereby certify that on March 18, 2021, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants, to:

Donald E. Smolen, II - don@smolen.law
Laura L. Hamilton - laura@smolen.law
Dustin Vanderhoof - dustin@smolen.law
Jack Warren - jack@smolen.law

*Attorneys for Plaintiff*

☐    I hereby certify that on _____ I served the attached document by United States Certified Mail, Return Receipt Requested on the following, who are not registered participants of the ECF System:

s/ Kent B. Rainey
Kent B. Rainey