# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) JENNIFER SCOTT CALLAWAY,** | ) | |
| **As parent and next friend of D.C.,** | ) | |
| **a minor child,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.  21-CV-051-SPS** |
| | ) | |
| **(1) INDEPENDENT SCHOOL DISTRICT** | ) | |
| **NO. 1 OF OKMULGEE COUNTY a/k/a** | ) | |
| **OKMULGEE PUBLIC SCHOOLS,** | ) | |
| **a Political Subdivision of the State of** | ) | |
| **Oklahoma;** | ) | |
| **(2) STEPHANIE LEE; and** | ) | |
| **(3) DALAWNA BRENT;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS STEPHANIE LEE AND DALAWNA BRENT'S
## MOTION TO DISMISS WITH COMBINED BRIEF IN SUPPORT

Respectfully Submitted,

Kent B. Rainey, OBA No. 14619
M. Scott Major, OBA No. 33957
Emily C. Krukowski, OBA No. 32038
ROSENSTEIN, FIST & RINGOLD
525 South Main Street, Suite 700
Tulsa, Oklahoma 74103-4508
918-585-9211
918-583-5617 (Facsimile)
borainey@rfrlaw.com
scottmajor@rfrlaw.com
ekrukowski@rfrlaw.com

*Attorneys for Defendants*

**Date:  March 18, 2021**

# TABLE OF CONTENTS

DEFENDANTS STEPHANIE LEE AND DALAWNA BRENT'S MOTION TO DISMISS WITH COMBINED BRIEF IN SUPPORT ............................................... 1

Arguments and Authorities ............................................................... 1

Proposition I .................................................................................... 1

    The Individual Defendants are Entitled to Qualified Immunity on Plaintiff's Section 1983 Claim

    A.    Section 1983 and Qualified Immunity ...................................... 1

    B.    There is No Federal Constitutional Right to an Education ......................................................................... 3

    C.    Section 1983 is Not Appropriate for an IDEA Claim .............................................................................. 4

    D.    D.C.'s Due Process Rights Were Not Violated ......................... 5

        1.    Education is a Property Right Conferred by Oklahoma's Constitution ........................................... 6

        2.    D.C.'s Procedural Due Process Rights Were Not Violated .................................................................. 7

        3.    Plaintiff's Substantive Due Process Rights Were Not Violated ................................................................. 8

            i.    The Special Relationship Doctrine is Inapplicable ....................................................... 9

            ii.    The Danger Creation Exception is Inapplicable ....................................................... 10

            iii.    The Conduct Does Not "Shock the Conscience" ...................................................... 12

    E.    D.C.'s Equal Protection Rights Were Not Violated ................................................................................... 13

        1.     Individual Defendants Can Only Be Liable for
              Their Own Conduct ..................................................... 14

        2.     Supervisory Liability Exception................................. 14

        3.     Disabled Individuals are a "Class of One" and
              the Individual Defendants Cannot Be Held Liable
              for Equal Protection Violation ................................. 16

  F.     The Individual Defendants Cannot Be Liable for Any Denial
        of a Right to Access Pursuant to Title IX ................................. 18

Conclusion ........................................................................................... 20

  Proposition II ................................................................................... 20

  Plaintiff's Claims Against the Individual Defendants Under The
  ADA and Section 504 Fail to State a Claim Upon Which Relief
  Can Be Granted

  A.     The ADA Claim Against the Individual Defendants Must
        Be Dismissed............................................................................ 21

  B.     The Section 504 Claims Against the Individual Defendants
        Must Be Dismissed................................................................... 22

  Proposition III................................................................................... 25

  The Plaintiff Is Not Entitled to Recover Punitive Damages
  Against the Individual Defendants

Conclusion ........................................................................................... 25

Certificate of Service ............................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Gorman*
    536 U.S. 181 (2002) ................................................................. 25

*Bd. of Regents of State Colls. v. Roth*
    408 U.S. 564 (1972) ................................................................... 7

*Bowman v. Williamson Bd. of Educ.*
    488 F. Supp. 2d 679 (M.D. Tenn. 2007) ............................... 11,12

*Brooks v. Gaenzle*
    614 F.3d 1213 (10th Cir. 2010) ................................................. 3

*Brown v. Bd. of Ed. of Topeka*
    347 U.S. 483 (1954) ................................................................... 6

*Butler v. City of Prairie Village, Kansas*
    172 F.3d 736 (10th Cir. 1999) ................................................. 22

*Camuglia v. City of Albuquerque*
    448 F.3d 1214 (10th Cir. 2006) ........................................... 7, 12

*Cary v. Board of Educ. of Adams-Arapahoe Sch. Dist. 28-J*
    598 F.2d 535 (10th Cir. 1979) .............................................. 6, 7

*Chavez-Rodriquez v. City of Santa Fe*
    2008 U.S. Dist. LEXIS 108741 ................................................. 6

*Christiansen v. City of Tulsa*
    332 F.3d 1270 (10th Cir. 2003) ..................................... 9, 10, 11

*Cnty. of Sacramento v. Lewis*
    523 U.S. 833 (1998) ............................................................ 6, 12

*Cleveland Bd. of Educ. v. Loudermill*
    470 U.S. 532 (1985) ................................................................... 7

*Boster v. Philpot*
    645 F. Supp. 798 (D. Kan. 1986) .............................................. 6

*Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*
　　535 F.3d 1243 (10th Cir. 2008) ................................................................ 8

*Davis v. Monroe*
　　526 U.S. 629 (1999) ................................................................................ 19

*Deatherage v. Okla. Comm'n for Rehab. Servs*
　　2014 U.S. Dist. LEXIS 26151 ................................................................ 24

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*
　　489 U.S. 189 (1989) ................................................................................ 8

*Doe v. Big Walnut Local Sch. Dist. Bd. of Educ.*
　　837 F. Supp. 2d 742 (S.D. Ohio 2011) .................................................. 10

*Donahue v. Kansas Bd. of Educ.*
　　827 F. App'x 846 (10th Cir. 2020) .......................................................... 5

*Fitzgerald v. Barnstable School Committee*
　　555 U.S. 246 (2009) ........................................................................ 2122

*Fry v. Napoleon Cmty. Schs.*
　　137 S. Ct. 743 (2017) .............................................................................. 4

*Gabrielle M. v. Park Forest-Chicago Heights*
　　315 F.3d 817 (7th Cir. 2003) ................................................................ 19

*Glover v. Gartman*
　　899 F. Supp. 2d 1115 (D.N.M. 2012) .................................................... 11

*Graham v. Indep. Sch. Dist. No. I-89*
　　22 F.3d 991 (10th Cir. 1994) ................................................................ 10

*Grubs v. Bailes*
　　445 F.3d 1275 (10th Cir. 2006) ............................................................ 16

*Gutierrez v. Cobos*
　　841 F.3d 895 (10th Cir. 2016) ................................................................ 2

*Hedquist v. Walsh*
　　786 Fed. App'x 130 (10th Cir. 2019) ...................................................... 2

*Higgins v. Saavedra*
     2018 U.S. Dist. Lexis 10518 ...................................................................... 17

*Jacobsen v. Lambers*
     888 F. Supp. 1088 (D. Kan. 1995) ............................................................... 2

*Jennings v. City of Stillwater*
     383 F.3d 1199 (10th Cir. 2004) ........................................................... 16, 17

*Jicarilla Apache Nation v. Rio Arriba Cnty.*
     440 F.3d 1202 (10th Cir. 2006) ................................................................. 16

*Johnson ex rel. Estate of Cano v. Holmes*
     455 F.3d 1133 (10th Cir. 2006) ................................................................... 9

*KT & G Corp. v. Attorney General of State of Okla.*
     535 F.3d 1114 (10th Cir. 2008) ................................................................. 14

*Lakeside Builders, Inc.  v.  Planning Bd. of the Town of Franklin*
     2002 U.S. Dist. LEXIS 4725 ..................................................................... 17

*Martinez v. Carr*
     479 F.3d 1292 (10th Cir. 2007) ................................................................... 3

*Mathews v. Eldridge*
     424 U.S. 319 (1976) ..................................................................................... 7

*Meyers v. Colo. Dept. of Human Services*
     62 Fed. Appx. 831 (10th Cir. 2003) ......................................................... 22

*Mimics, Inc. v. Village of Angel Fire*
     394 F.3d 836 (10th Cir. 2005) ................................................................... 16

*Monell v. Department of Soc. Servs.*
     436 U.S. 658 (1978) ..................................................................................... 2

*Montez v. Romer*
     32 F.Supp.2d 1235 (D. Colo. 1999) ......................................................... 24

*Moore v. Cooksey*
     2000 U.S. App. LEXIS 31858.............................................................. 23, 24

*Moore v. Guthrie*
    438 F.3d 1036 (10th Cir. 2006) .................................................. 12

*Murrell v. Sch. Dist. No. 1*
    186 F.3d 1238 (10th Cir. 1999) .................................................. 14, 15, 18

*Neiberger v. Hawkins*
    208 F.R.D. 301 (D. Colo. 2002) .................................................. 24

*Nelson v. Geringer*
    295 F.3d 1082 (10th Cir. 2002) .................................................. 2

*Nordlinger v. Hahn*
    505 U.S. 1 (1992) .................................................. 14

*Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cnty. of Denver, Colo.*
    233 F.3d 1268 (10th Cir. 2000) .................................................. 5

*Pahls v. Thomas*
    718 F.3d 1210 (10th Cir. 2013) .................................................. 2, 3

*Pearson v. Callahan*
    555 U.S. 223 (2009) .................................................. 2

*Penrod v. Zavaras*
    94 F.3d 1399 (10th Cir. 1996) .................................................. 13

*Plyler v. Doe*
    457 U.S. 202 (1982) .................................................. 3

*Rachamim v. Ortiz*
    147 Fed. App'x 731 (10th Cir. 2005) .................................................. 2

*Ray v. Dept. of Corrections*
    2016 U.S. Dist. LEXIS 41184 .................................................. 21, 22, 23, 24

*Ray v. Dep't of Corrections*
    2016 U.S. Dist. LEXIS 40131 .................................................. 21, 22

*Reid v. Pautler*
    36 F. Supp. 3d 1067 (D.N.M. 2014) .................................................. 6

*Robbins v. Oklahoma*
    519 F. 3d 1242 (10th Cir. 2008) ............................................................. 8, 14

*Romero v. Bd. of Cnty. Comm'rs*
    202 F.Supp.3d 1223 (D. N.M. 2016) ...................................................... 22, 23

*Rost v. Steamboat Springs RE-2 Sch. Dist.*
    511 F.3d 1114 (10th Cir. 2008) ............................................................. 12, 13

*Ruiz v. McDonnell*
    299 F.3d 1173 (10th Cir. 2002) ............................................................. 10, 11

*Schaefer v. Las Cruces Pub. Sch. Dist.*
    716 F. Supp. 2d 1052 (D. N.M. 2010) ................................................... 11, 13

*Storie v. Independent Sch. Dist., No. 13*
    834 F. Supp. 2d 1305 (E.D. Okla. 2011) ......................................... 14, 16, 18

*Tennessee v. Lane*
    541 U.S. 509 (2004) ..................................................................................... 16

*Uhlrig v. Harder*
    64 F.3d at 574 (10th Cir. 1995) .................................................................. 12

*Village of Willowbrook v. Olech*
    528 U.S. 562 (2000) ............................................................................... 16, 22

*Welsh v. City of Tulsa*
    977 F.2d 1415 (10th Cir. 1992) .................................................................. 16

*Wilson v. Housing Authority of Silver Lake*, KS
    2019 U.S. Dist. LEXIS 116679 ..................................................................... 5

## Statutes & Authorities

20 U.S.C. § 1681(a) ............................................................................................. 18

20 U.S.C. §§ 1400 *et seq.* .................................................................................... 4

29 U.S.C. § 794(a) ............................................................................................... 23

29 U.S.C. § 794(b) ............................................................................................... 23

42 U.S.C. § 1983 ...................................................................................... 1

42 U.S.C. 12131(1) ................................................................................. 21

42 U.S.C. § 12132 ................................................................................... 21

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1

Okla. Const. art. I, § 5 ............................................................................. 6

U.S. Const. amend. XIV ........................................................................... 6

**DEFENDANTS STEPHANIE LEE AND DALAWNA BRENT'S
MOTION TO DISMISS WITH COMBINED BRIEF IN SUPPORT**

Defendants Stephanie Lee and Dalawna Brent (the "Individual Defendants")

move, pursuant to FED. R. CIV. P 12(b)(6), to dismiss all of the claims asserted by the

Plaintiff, Jennifer Scott Callaway, as parent and next friend of D.C., a minor child (the

"Plaintiff") for failure to state a claim upon which relief can be granted. In particular, the

Individual Defendants enjoy qualified immunity as to Plaintiff's 42 U.S.C. § 1983

("Section 1983") claim(s) and are not proper parties to claims for violation of Section 504

of the Rehabilitation Act ("Section 504") and Title II of the Americans with Disabilities

Act ("ADA"). Furthermore, punitive damages are not awardable in Section 504 and ADA

claims. In support of their Motion, the Individual Defendants show the Court as follows:

## ARGUMENTS AND AUTHORITIES

### I.

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S SECTION 1983 CLAIM

**A.     Section 1983 and Qualified Immunity**

Section 1983 of Title 42 of the United States Code provides that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . ., subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 creates the right of action and does not create any

substantive rights, which must come from the Constitution or from a federal statute.

*Nelson v. Geringer*, 295 F.3d 1082, 1096-97 (10th Cir. 2002).[1] Individual defendants to a Section 1983 action "may raise a defense of qualified immunity." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (citation omitted).

A public official is entitled to qualified immunity "unless his conduct violated a clearly established statutory right." *Hedquist v. Walsh*, 786 Fed. App'x 130, 131 (10th Cir. 2019). "Qualified immunity is an 'immunity from suit rather than a mere defense to liability.'" *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (citations omitted). Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," public officials are "entitled to qualified immunity 'in all but the most exceptional cases.'" *Rachamim v. Ortiz*, 147 Fed. App'x 731, 734 (10th Cir. 2005) (citations omitted). Such protection "applies regardless of whether the governmental official's effort is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations omitted).

The Tenth Circuit has characterized qualified immunity as "the norm" in actions against public officials, explaining that "officials enjoy a ***presumption of immunity*** when

---

[1]   To the extent Plaintiff's Complaint can be construed as asserting a *Monell* claim against the Individual Defendants under the guise of *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978), that claim must be dismissed. *Monell* involves municipal liability, not individual liability in a defendant's official capacity or otherwise. *See Jacobsen v. Lambers*, 888 F. Supp. 1088, 1097 (D. Kan. 1995).

the defense of qualified immunity is raised." *Pahls*, 718 F.3d at 1227 (emphasis added).

To overcome the presumption, a plaintiff must make a two-part showing:

> First, the plaintiff must demonstrate that the defendant violated one of [the plaintiff's] constitutional or statutory rights. Second, the plaintiff must show that the infringed right at issue was clearly established at the time of the alleged unlawful activity such that a reasonable [public official] would have known that his or her challenged conduct was illegal.

*Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) (citations omitted). The Tenth

Circuit has characterized this as a heavy burden. *Brooks v. Gaenzle*, 614 F.3d 1213, 1219

(10th Cir. 2010) (citations omitted).

The Plaintiff's claims against the Individual Defendants fail to allege facts to

overcome the presumption of qualified immunity, as the Plaintiff's Complaint fails to

demonstrate that the Individual Defendants violated D.C.'s federal constitutional or

statutory rights.

### B.      There is No Federal Constitutional Right to an Education

The Plaintiff appears to assert that the Individual Defendants violated D.C.'s

constitutional right to receive a free public education. Complaint, ¶ 80. However, there is

no U.S. Constitutional right to education. While the U.S. Supreme Court has recognized

the importance of public education "in maintaining the fabric of our society," the right to

a public education is not a fundamental right under the Fourteenth Amendment. *Plyler v.

Doe*, 457 U.S. 202, 221-22 (1982) ("Public education is not a 'right' granted to

individuals by the Constitution.") (citation omitted). Thus, to the extent that Plaintiff's

Complaint can be construed as bringing a Section 1983 as it relates to any U.S.

Constitutional right to education, such a claim should be dismissed.

## C.     Section 1983 is Not Appropriate for an IDEA Claim

Throughout her Complaint, Plaintiff makes references to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and its requirements that states who receive federal funding for education make available a "free appropriate public education"—or more concisely known as a FAPE—to qualifying children with certain physical or intellectual disabilities. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748-49 (2017) (internal citations omitted). Plaintiff's claims in this case are premised on the Individual Defendants, and the School District's, failure to provide D.C.—a student with a disability—with education services in accordance with an individualized education program ("IEP") developed pursuant to the IDEA. Complaint, ¶¶ 2, 4.

Plaintiff alleges that the School District failed to comply with the provisions of D.C.'s IEP when an adult did not accompany D.C. when he was toileting. This failure permitted a fellow student to photograph D.C. while in the bathroom, and D.C. was injured when the photographs were shared with other students. Complaint, ¶¶ 35-39, 46-48. All of Plaintiff's federal claims concern the alleged failure to comply with the provisions of D.C.'s IEP. Complaint, ¶ 85 (Section 1983 Claim – premising liability on the School District "failing to ensure that the explicit requirements of D.C.'s IEP were being followed"); ¶ 105 (ADA Claim – "Defendant(s) were on notice that he needed those ASD specific services but did not provide those services. Finally, the services he needed were available as a reasonable accommodation"); ¶ 117 (Section 504 Claim – premising liability on the School District "failing to adequately staff the special education classroom and not provid[ing] D.C. the adult aide he is required, in violation of D.C.'s

documented needs"); ¶ 121 (Section 504 Claim - premising liability on the School District "den[ying] services, programs and activities to D.C.").

To the extent that the Plaintiff is attempting to use Section 1983 as a vehicle to bring any claims against the Individual Defendants under the IDEA, this is not an appropriate avenue. While Congress has not expressly prohibited Section 1983 suits as remedies for IDEA violations, the Tenth Circuit has consistently held that Section 1983 claims may not be used to remedy IDEA violations. *E.g.*, *Donahue v. Kansas Bd. of Educ.*, 827 F. App'x 846, 853 (10th Cir. 2020). Further, it is apparent that the IDEA's exhaustion scheme prevents the Plaintiff from relying on Section 1983 for any IDEA claim. *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cnty. of Denver, Colo.*, 233 F.3d 1268, 1273-74 (10th Cir. 2000). This exhaustion scheme is laid out in the School District's Motion to Dismiss, which was concurrently filed with this Motion. As such, to the extent that Plaintiff attempts to use Section 1983 as a means to bring IDEA claims against the Individual Defendants, that claim should be dismissed.

### D.     D.C.'s Due Process Rights Were Not Violated

In Paragraph 80 of her Complaint, the Plaintiff states that the right to receive a free public education is a right conferred by the Oklahoma Constitution, which is thus "a property and/or liberty interest, within the meaning of the Fourteenth Amendment of the United State Constitution." Complaint, ¶ 80. While not entirely clear, this Paragraph, along with the allegations, implicate the Due Process Clause of the Fourteenth Amendment, which provides that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV. This has been

5

construed as encompassing two form of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. *Reid v. Pautler*, 36 F. Supp. 3d 1067, 1136 (D.N.M. 2014) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)). "Under either form of protection, however, a person must have a protected interest in either life, liberty, or property." *Chavez-Rodriquez v. City of Santa Fe*, No. CIV 07-0633 JB/DJS, 2008 U.S. Dist. LEXIS 108741, at *20 (D.N.M. Oct. 9, 2008).

As will be explained herein, D.C. has not been deprived of any due process rights.

### 1.    Education is a Property Right Conferred by Oklahoma's Constitution

As noted above, the right to a free public education is not a constitutionally protected right under the U.S. Constitution. Rather, it is a matter generally included in state constitutions, as "education is perhaps the most important function of state and local governments. *Brown v. Bd. of Ed. of Topeka*, 347 U.S. 483, 493 (1954). Such is the case in Oklahoma, as Oklahoma's Constitution provides that "[p]rovisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all children of the state and free from sectarian control." OKLA. CONST. ART. I, § 5. Accordingly, the U.S. Supreme Court has recognized a property right in public education. *Compare Boster v. Philpot*, 645 F. Supp. 798, 803 (D. Kan. 1986) (discussing the U.S. Supreme Court precedent that has "recognized a property interest in public education"), *with Cary v. Board of Educ. of Adams-Arapahoe Sch. Dist. 28-J*, 598 F.2d 535, 543 (10th

Cir. 1979) (recognizing that under U.S. Supreme Court precedent, "there is no constitutional right to an education").

### 2. D.C.'s Procedural Due Process Rights Were Not Violated

The Tenth Circuit prescribes a two-step inquiry to determine whether an individual's procedural due process rights were violated: (i) "[d]id the individual possess a protected property [or liberty] interest to which due process protection was applicable?"; and (ii) "[w]as the individual afforded an appropriate level of process?" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (citations omitted). "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570-71 (1972) (emphasis in original omitted). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citations and internal quotations omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citations and alterations in original omitted).

Taking the allegations in Plaintiff's Complaint as true, it is clear that D.C.'s procedural due process rights were not violated. In this case, the Plaintiff's Complaint indicates that D.C. was taken out of school by his parents and the incident was reported to local law enforcement authorities. Complaint, ¶¶ 50-55. The Plaintiff has not plead facts

to demonstrate (a) how long D.C. was removed from school by his parents, and (b) how, if at all, D.C. was prevented from returning to school. The Complaint simply indicates D.C. was removed from school on the day of the incident—September 30, 2020—by his parents and not the School District. If anything, the Plaintiff's Complaint indicates a mere *de minimis* disruption of D.C.'s school day, which does not give rise to a procedural due process claim. *See Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1257 (10th Cir. 2008) (explaining that, where a student had been put in time out, "any loss of a property right is *de minimis* and not subject to procedural protections") (emphasis added). Thus, the Plaintiff has not sufficiently plead a procedural due process claim, and the Complaint must be dismissed.

### 3. Plaintiff's Substantive Due Process Rights Were Not Violated

As to any claim for a violation of substantive due process, state actors may be held liable under Section 1983 only for their own affirmative acts that violate a plaintiff's due process rights and cannot be held liable for acts of third parties. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). "[N]othing in the language of the Due Process Clause itself requires [a] [s]tate to protect the life, liberty and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 195. The Due Process Clause is not a guarantee of a minimal level of safety and security. *Id.*

There are, however, exceptions to this general rule. The first exception is known as the special-relationship doctrine, and arises when the state has a custodial relationship

with the victim, which triggers an affirmative duty to provide protection to that individual. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003) (citations omitted). The second exception is known as the danger-creation theory, which provides that a state may be liable for an individual's safety "if it created the danger that harmed the individual." *Id.* (citations omitted). If either of these exceptions applies, the conduct of the state actor must go beyond negligence to the point of "shocking the conscience." *Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1142 (10th Cir. 2006) ("The shocks the conscience standard applies to both types of suits.").

In this case, not only do neither of these exceptions apply, but the complained of conduct does not "shock the conscience."

### i.    The Special Relationship Doctrine is Inapplicable

The Plaintiff's allegations in her Complaint suggest that she is asserting the existence of a special relationship between the School District and D.C. Specifically, the Plaintiff alleges that D.C. was disabled, which entitled him to protections under the law. Complaint, ¶¶ 19-39. However, the law is clear that any special relationship between D.C. and the School District did not rise to the level required for application of the special relationship doctrine to any substantive due process claim.

The Tenth Circuit has indicated that "the special relationship doctrine 'exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual.'" *Christiansen*, 332 F.3d at 1280 (citation omitted). Moreover, to the extent that the Plaintiff suggests that D.C.'s disability created a special relationship between him and the School District, courts have not made any distinction

between disabled and nondisabled students for purposes of the special relationship doctrine. For example, in *Doe v. Big Walnut Local Sch. Dist. Bd. of Educ.*, 837 F. Supp. 2d 742 (S.D. Ohio 2011), the plaintiff was a disabled student who was allegedly bullied and harmed by his fellow students. *Id.* at 744. When reaching its decision that there was no special relationship between the disabled student and the school district, the court reasoned that the compulsory attendance laws did not create the restraint necessary to impose a constitutional duty on the school district to protect the student. *Id.* at 752.

Accordingly, the Plaintiff cannot show that there was a special relationship between D.C. and the School District. Thus, the Individual Defendants cannot be liable under any substantive due process theory based on the special relationship doctrine.

## ii. The Danger Creation Exception Is Inapplicable

Plaintiff's Complaint suggests that the School District created some sort of danger related to the incident involving D.C. because it failed to follow D.C.'s IEP. The danger creation theory imposes liability on a state actor for an individual's safety if it can be shown that "it created the danger that harmed the individual." *Christiansen*, 332 F.3d at 1280 (quotation omitted). Specifically, danger creation "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) (citation omitted). In order to state a substantive due process claim under the danger creation theory, a plaintiff must meet a six-part test: "(1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial

risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscious." *Ruiz v. McDonnell*, 299 F.3d 1173, 1182-83 (10th Cir. 2002) (citation omitted).

In determining whether the danger-creation exception applies, the Tenth Circuit has focused on the deliberateness of the conduct in relation to the caused harm. *See Christiansen*, 332 F.3d at 1281. The defendant must recognize the unreasonableness of the risk of the conduct and act "with an intent to place a person unreasonably at risk." *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1135 (D.N.M. 2012) (citations omitted).

In considering these elements, the Individual Defendants in no way acted with deliberate intent in relation to the incident involving D.C. The Plaintiff alleges that D.C. was inappropriately photographed while using the restroom, which was the result of the School District's employees' failure to follow D.C.'s IEP. With respect to the Individual Defendants, there are no allegations that the Individual Defendants were in any way involved in the incident involving D.C. If this can be construed as some sort of inaction on the part of the Individual Defendants, such inaction does not constitute conduct that created or increased the alleged danger faced by D.C. *See Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1074-75 (D.N.M. 2010) (the court found that doing nothing, by not implementing policies and by not taking action, did not constitute an affirmative act for establishing danger creation); *Bowman v. Williamson Bd. of Educ.*, 488 F. Supp. 2d 679, 684 (M.D. Tenn. 2007) (discussing plaintiff's allegations that

school ignored dangerous allegations after called to its attention and concluding that failure to act does not satisfy the affirmative act requirement).

Thus, it is apparent that the Plaintiff's Complaint fails to plead facts to show that the danger-creation theory applies. As such, the Individual Defendants cannot be liable under any substantive due process claim based on the danger-creation theory.

### iii.    The Conduct Does Not "Shock the Conscience"

Even if the Court finds one of the exceptions applies, the complained of conduct in no way "shocks the conscience." A government actor's official conduct intended to injure in a way that cannot reasonably be justified by any government interest most likely shocks the conscience. *See Lewis*, 523 U.S. at 849 ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."). "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Camuglia*, 448 F.3d at 1222 (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)). "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 1222-23 (alterations in original omitted) (quoting *Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir. 1995)).

Here, the Plaintiff's allegations cannot meet this high standard. Plaintiff's allegations against the Individual Defendants center on the failure to follow the requirements of D.C.'s IEP. Complaint, ¶ 85. Any such failure does not constitute deliberate conduct. At best, it might give rise to a remedy in tort. *See Rost v. Steamboat*

*Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008) ("Ms. Rost's allegation that the district failed to appropriately follow and enforce its sexual harassment policy sounds in negligence, not deliberate misconduct."); *see also Schaefer*, 716 F. Supp. 2d at 1074-75 (failure to implement policies to improve hallway monitoring and stop plaintiff's son from being kicked and/or punched in the testicles in the hallway did not shock the conscience).

Further, there are also no allegations that the Individual Defendants were directly involved in the incident involving D.C. or had any knowledge that the type of conduct giving rise to the incident involving D.C. had occurred multiple times. The allegations indicate this was an isolated incident, which does not amount to "conscious shocking" behavior. Even if there were such allegations, this still would not give rise to the level of shocking the conscious. *Schaefer*, 716 F. Supp. 2d at 1075 (noting how the "difficulty of controlling middle school students decreases the shocking nature of the conduct"). Therefore, the Individual Defendants cannot be liable under any substantive due process theory and are entitled to a dismissal of this claim.

### E.    D.C.'s Equal Protection Rights Were Not Violated

Plaintiff's third cause of action asserts that D.C.'s equal protection rights were violated by the School District, and its employees, the Individual Defendants. Complaint, ¶¶ 78-99. Generally, "[a]n equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citations omitted). Equal protection "does not forbid classifications[,]" but "[i]t simply keeps governmental decisionmakers from treating

differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citations omitted); *see also Storie v. Indep. Sch. Dist., No. 13*, 834 F. Supp. 2d 1305, 1309 (E.D. Okla. 2011) ("[T]he Constitution's Equal Protection clause is implicated 'when the state treats two groups, or individuals, differently.'") (quoting *KT & G Corp. v. Attorney General of State of Okla.*, 535 F.3d 1114, 1136 (10th Cir. 2008)).

As will be demonstrated, the Plaintiff has not plead sufficient facts to demonstrate that D.C.'s Equal Protection rights were violated by the Individual Defendants.

### 1. Individual Defendants Can Only Be Liable for Their Own Conduct

First, there are no allegations to implicate that the Individual Defendants were directly involved in the incident involving D.C. As the Complaint alleges, a teacher named Sheila Nelson and an aide named Rochelle Pierson were more directly involved in the incident involving D.C. Complaint, ¶¶ 40-49. These allegations cannot give rise to equal protection liability under Section 1983, as a state actor is generally subject to liability only for its own conduct. *See Robbins*, 519 F.3d at 1251 (citing *DeShaney*, 489 U.S. at 197).

### 2. Supervisory Liability Exception

There does appear to be an exception for what has been referred to as "supervisor liability." *See Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1249-51 (10th Cir. 1999). This liability requires that a supervisor demonstrate "deliberate indifference to known . . . harassment." *Id.* at 1249. Liability can result when "a supervisor . . . participates in or

consciously acquiesces in" the complained of conduct. *Id.* (citations omitted). The failure to prevent discrimination before it occurs is not actionable. *Id.* at 1250 n.7.

Plaintiff's allegations involving the Individual Defendants seemingly give rise to a supervisory liability claim. As Plaintiff's constitutional claim provides, the Individual Defendants are liable because the failed "to ensure that the special education classroom at Dunbar was adequately staffed and by failing to ensure that the explicit requirements of D.C.'s IEP were being followed." <u>Complaint</u>, ¶ 85. The Complaint further states that the Individual Defendants "knew or should have known, that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations. *Id.* at ¶ 83.

The Plaintiff cannot be successful under a supervisory liability claim. The Complaint is devoid of any allegations that the Individual Defendants acted with "deliberate indifference" to the incident involving D.C. There are no allegations that the Individual Defendants had knowledge of the incident involving D.C. until after it happened. Further, the Complaint indicates that the School District and the Individual Defendants took appropriate action by notifying local law enforcement. <u>Complaint</u>, ¶¶ 50-64. This conduct does not give rise to a showing of any "deliberate indifference."

Further, the gravamen of Plaintiff's Complaint is that the incident involving D.C. resulted from the failure to follow the IEP. The allegations against the Individual Defendants focus on the failure to follow D.C.'s IEP and the failure to train and/or supervise School District employees regarding IEPs. Essentially, these are claims that attempt to hold the Individual Defendants liable for failing to prevent the alleged

discriminatory conduct from occurring. As noted above, one cannot be liable for the failure to prevent discrimination. As such, the Individual Defendants cannot be held liable under an equal protection claim.

### 3. Disabled Individuals are a "Class of One" and the Individual Defendants Cannot Be Held Liable for Equal Protection Violation

Disabled individuals are not a suspect class for purposes of an equal protection challenge. *See Tennessee v. Lane*, 541 U.S. 509, 522 (2004); *Welsh v. City of Tulsa*, 977 F.2d 1415, 1420 (10th Cir. 1992). Thus, it appears that the Plaintiff is asserting an equal protection claim on a "class of one" theory. *Village of Willowbrook v. Olech*, 528 U.S. 562, 563-65 (2000). To succeed on such a claim, the Tenth Circuit has required that a plaintiff establish that he was intentionally treated differently from those similarly situated. *See Grubs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006). The Tenth Circuit has also required a plaintiff establish that the "the official action was objectively irrational and abusive." *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1211 (10th Cir. 2006) (emphasis omitted). The Tenth Circuit has noted that a "multiplicity of relevant (nondiscriminatory) variables requires plaintiff to provide compelling evidence of other similarly situated persons who were in fact treated differently." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1215 (10th Cir. 2004) (citation omitted). Moreover, the Tenth Circuit has also required that the claim "allege some level of animosity or ill will." *Storie*, 834 F. Supp. 2d at 1309-10 (citing *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005)).

In asserting this claim, the Plaintiff makes no factual allegations demonstrating that D.C. was treated differently from those who were similarly situated. This is a heavy burden and is "exceedingly difficult" in a class of one context. *Higgins v. Saavedra*, No. CIV 17-0234 RB/LF, 2018 U.S. Dist. LEXIS 10518, at *15-16 (D.N.M. Jan. 23, 2018) (citations omitted). Courts have noted the difficulty in cases involving students in an educational setting. The Tenth Circuit in *Jennings* called attention to this language from the District of Massachusetts:

> It might be suggested that all applicants should be considered "similarly situated" simply because they had all made requests for waivers of the dead-end street length regulation. But that is so broad a definition of "similarly situated" that it is not useful for equal protection analysis; it could be applied to any group of applicants where, looking back, one could see that there had been some who succeeded and some who failed. For example, high school students whose applications to a particular college were rejected could allege that they were being treated differently from the "similarly situated" fellow students whose applications were accepted. In the example, one would want to know a good deal more about the merits of individual applicants before deciding who was similarly situated to whom.

*Jennings*, 383 F.3d at 1214 (quoting *Lakeside Builders, Inc. v. Planning Bd. of the Town of Franklin*, No. 00-12170-GAO, 2002 U.S. Dist. LEXIS 4725, at *8 (D. Mass. Mar. 21, 2002)). In light of this, Plaintiff's general equal protection claims fail to meet the heavy burden required in a "class of one" equal protection claim. Plaintiff has not plead anything to suggest that D.C. was treated differently than similarly situated individuals.

The Plaintiff's contentions against the Individual Defendants contain no factual allegations to support that they acted with any animosity or ill-will towards D.C. Plaintiff merely makes conclusory statements that the Individual Defendants violated D.C.'s right to equal access and denied with equal protection based on his disabilities. These general

17

allegations do not amount to any ill-will or animosity. This fails to sufficiently satisfy the intent requirement necessary for an equal protection violation by the School District. *See Storie*, 834 F. Supp. 2d at 1309-10.

### F. The Individual Defendants Cannot Be Liable for Any Denial of a Right to Access Pursuant to Title IX

Included in Plaintiff's constitutional claim is a claim that Individual Defendants "knew or should have known, that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations." <u>Complaint</u>, ¶ 83. To the extent that this is construed as alleging a violation of Title IX, this claim fails.

Title IX of the Education Amendments of 1972 ("Title IX") provides "no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX permits a plaintiff to hold a school district "liable for its *own* decision to remain idle in the face of known student-on-student harassment in its schools." *Murrell*, 186 F.3d at 1246 (citation omitted) (emphasis in original). A plaintiff must allege the following factors to state a claim of school district liability under Title IX: (1) the district had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school. *Id.* (citation omitted).

The Plaintiff cannot meet this burden. The Complaint does not allege that the School District, its employees, or the Individual Defendants had knowledge of the incident involving D.C. until after it happened. There are no allegations that the School District and the Individual Defendants were deliberately indifferent to the incident. In fact, the Complaint indicates that the School District and the Individual Defendants took appropriate action by notifying local law enforcement. Complaint, ¶¶ 50-64. Further, there is nothing plead in the Complaint to indicate that the incident involving D.C. was so severe and offensive that it deprived D.C. of educational benefits.

To meet this requirement, D.C. must have been deprived of access to the educational benefits or opportunities provided by the school. "[A] plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 652 (1999) (citation omitted); *Gabrielle M. v. Park Forest-Chicago Heights*, 315 F.3d 817, 823 (7th Cir. 2003) ("The harassment must have a 'concrete, negative effect' on the victim's education.") (citation omitted). Some examples of negative impact on access to education include dropping grades, becoming homebound or hospitalized due to harassment, physical violence, and withdrawing from school. *See Park Forest-Chicago Heights*, 315 F.3d at 823 (collecting cases and noting examples of negative impact on access to education).

Plaintiff has not plead any facts to indicate that D.C.'s ability to receive an education or that his enjoyment of equal access of education programs suffered. While D.C. was taken out of school immediately following the incident, there is nothing to indicate that D.C. was further harmed or prevented from returning to school. If anything, this appears to be an isolated incident that did not cause significant harm to D.C.'s ability to enjoy the educational benefits of the School District. Accordingly, to the extent that Plaintiff's Complaint asserts a Title IX violation, this claim should be dismissed.[2]

## CONCLUSION

As the above indicates, the Plaintiff cannot establish that the Individual Defendants violated a federal constitutional or statutory right. This failure prevents the Plaintiff from being able to overcome the presumption of immunity with regard to her Section 1983 claim. As such, this Court should dismiss Plaintiff's Section 1983 claim(s) against the Individual Defendants.

## II.

## PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS UNDER THE ADA AND SECTION 504 FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Paragraphs 100 through 109 of Plaintiff's Complaint allege a claim against the Individual Defendants for violation of the ADA, while Paragraphs 110 through 124 of Plaintiff's Complaint allege a claim against the Individual Defendants for violation of

---

[2] Plaintiff's allegations regarding the Title IX implicate the IDEA, as Plaintiff's allegations regarding Title IX stem from the School District's failure to follow D.C.'s IEP. The IDEA provides an appropriate avenue for relief, which was briefed in the School District's Motion to Dismiss filed concurrently with this Motion.

Section 504. These claims should be dismissed, as there is no individual liability under

Section 504 and the ADA.[3]

### A.     The ADA Claims Against the Individual Defendants Must Be Dismissed

Title II of the ADA prohibits a "qualified individual with a disability" from being

discriminated against, "excluded from participation in," or "denied the benefits of . . .

services, programs, or activities" by "a public entity" on the basis of such disability. 42

U.S.C. § 12132. The ADA defines "public entity" to mean "any State or local

government" and "any department, agency, special purpose district, or other

instrumentality" of a state or local government. 42 U.S.C. § 12131(1). Because the

ADA's definition of public entity does not include individuals, most courts that have

considered the question have held that claims under Title II of the ADA cannot be

maintained as against individual defendants. *Ray v. Dep't of Corrections*, No. CIV-14-

735-C, 2016 U.S. Dist. LEXIS 41184, *9-10 (W.D. Okla. Mar. 2, 2016).

In *Ray*, then United States Magistrate Judge Charles B. Goodwin issued a report

and recommendation for the dismissal of individual capacity claims under the ADA

against two Department of Corrections officials. That recommendation was subsequently

adopted by the Court in *Ray v. Dep't of Corrections*, No. CIV-14-735-C, 2016 U.S. Dist.

---

[3]     To the extent that Paragraph 83 of Plaintiff's Complaint alleges a violation of Title IX against the Individual Defendants, that claim should be dismissed. It is well settled that Title IX's implied remedy for damages is available **only against an educational institution that is a funding recipient** and may not be asserted against a school official in his or her individual capacity. *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009).

LEXIS 40131 (W.D. Okla. Mar. 28, 2016). Magistrate Judge Goodwin noted that the Second, Sixth, and Eighth Circuits, as well as district courts within the Tenth Circuit, have concluded that Title II of the ADA does not authorize claims against individuals. *Ray*, 2016 U.S. Dist. LEXIS 41184, at *9 (collecting cases). He also noted that the Tenth Circuit held in *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736 (10th Cir. 1999) that Title I of the ADA, which prohibits discrimination by employers, "precludes personal capacity suits against individuals who do not otherwise qualify as employers." *Ray*, 2016 U.S. Dist. LEXIS 41184, at *9 (quoting *Butler*, 172 F.3d at 744).[4]

As Magistrate Judge Goodwin observed, other district courts within the Tenth Circuit have held that Title II of the ADA does authorize suit against individual governmental employees. Cases decided subsequent to *Ray* have continued to reach this result. *E.g.*, *Wilson v. Housing Authority of Silver Lake, KS*, No. 19-04026-HLT-ADM, 2019 U.S. Dist. LEXIS 116679, at *5-6 (D. Kan. May 30, 2019) (stating that Title II of the ADA does not impose liability on individual defendants); *Romero v. Bd. of Cnty. Comm'rs*, 202 F.Supp.3d 1223, 1250 (D.N.M. 2016) (stating that Title II of the ADA

---

[4]    Magistrate Judge Goodwin recognized that there is a single unpublished and non-precedential decision from the Tenth Circuit to the contrary. *Ray*, 2016 U.S. Dist. LEXIS 41184, *10 (citing *Meyers v. Colo. Dept. of Human Services*, 62 Fed. App'x 831 (10th Cir. 2003). However, he noted that this disposition "appears to be an outlier and is not persuasive in light of the express statutory definition of 'public entity' and the weight of authority from numerous jurisdictions squarely holding that 'Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity.'" *Id.* (citation omitted).

does not provide for individual capacity suits against state officials and citing favorably to other circuit courts who have determined this to be the case).

Because the ADA's definition of "public entity" is limited to governmental entities and does not include individual employees, and because the weight of authority holds that Title II of the ADA does not authorize suits against government employees in their individual capacities, the Plaintiff's claims under the ADA against the Individual Defendants in their **individual capacities** should be dismissed for failure to state a claim upon which relief can be granted.

>    **B.**    **The Section 504 Claims Against the Individual Defendants**
>            **Must Be Dismissed**

Section 504 prohibits discrimination by reason of disability "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Program or activity" is defined as "a department, agency, . . . or other instrumentality of a state or local government," "a college, university, or other postsecondary institution," "an entire corporation, partnership, or other private organization," or any other entity which is established by two or more of the foregoing entities. 29 U.S.C. § 794(b). "Section 504 does not specifically proscribe such exclusion or discrimination by an individual person." *Ray*, 2016 U.S. Dist. LEXIS 41184, at *11 (citation omitted).

In concluding that a claim may not be brought under Section 504 against an individual governmental employee, in *Ray*, Magistrate Judge Goodwin noted that in an unpublished decision, the Tenth Circuit affirmed the dismissal of damages claims under Section 504 based upon the conclusion that "none of the named defendants are subject to

personal liability for damages." *Id.* (citing *Moore v. Cooksey*, No. 00-2209, 2000 U.S. App. LEXIS 31858 (10th Cir. Dec. 14, 2000)). Magistrate Judge Goodwin also pointed out that the United States District Court for the Western District of Oklahoma had previously determined that "individual defendants are not subject to liability in their individual capacities under [Section 504 of] the Rehabilitation Act." *Id.* (citing *Deatherage v. Okla. Comm'n for Rehab. Servs.*, No. CIV-13-811-M, 2014 U.S. Dist. LEXIS 26151, *13-14 (W.D. Okla. Feb. 28, 2014)).

The court in *Deatherage* cited *Montez v. Romer*, 32 F. Supp. 2d 1235, 1241 (D. Colo. 1999)—a case in which the court concluded that although prisoners in state penal institutions could bring suit alleging violations of the ADA and Section 504, neither statute authorized an action against individual government employees in their individual capacities—and *Neiberger v. Hawkins*, 208 F.R.D. 301, 312 (D. Colo. 2002), where the district court dismissed individual capacity claims by patients in a state mental health facility against the individual defendants, noting that "individual defendants are not subject to liability in their individual capacities under [Section 504 of] the Rehabilitation Act."

Because the foregoing authorities establish that Section 504 does not allow the imposition of liability on government employees in their individual capacities, the Plaintiff's Section 504 claims against the Individual Defendants in their **individual capacities** should be dismissed for failure to state a claim upon which relief can be granted.

## III.

### THE PLAINTIFF IS NOT ENTITLED TO RECOVER PUNITIVE DAMAGES AGAINST THE INDIVIDUAL DEFENDANTS

In the Complaint's prayer for relief, the Plaintiff alleges that she is entitled to recover punitive damages. <u>Complaint</u>, at pp. 18-19. However, in the event the Court finds that the Individual Defendants can be individually named as defendants in Plaintiff's claims brought under Section 504 and the ADA, punitive damages are not recoverable.

In *Barnes v. Gorman*, 536 U.S. 181 (2002), the Court relied on Title VI in holding that punitive damages are not available under Title II of the ADA or Section 504. As the Court explained, "Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under [Section] 202 of the ADA and [Section] 504 of the Rehabilitation Act." *Id*. at 189.

### <u>CONCLUSION</u>

For the reasons and arguments stated and addressed herein, the Individual Defendants request that all of Plaintiff's claims asserted against them be dismissed.

Respectfully Submitted,

ROSENSTEIN, FIST & RINGOLD

s/ Kent B. Rainey
Kent B. Rainey, OBA No. 14619
M. Scott Major, OBA No. 33957
Emily C. Krukowski, OBA No. 32038
ROSENSTEIN, FIST & RINGOLD
525 South Main Street, Suite 700
Tulsa, Oklahoma 74103-4508
918-585-9211
918-583-5617 (Facsimile)
borainey@rfrlaw.com
scottmajor@rfrlaw.com
ekrukowski@rfrlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF DELIVERY

☒   I hereby certify that on March 18, 2021, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants, to:

Donald E. Smolen, II - don@smolen.law
Laura L. Hamilton - laura@smolen.law
Dustin Vanderhoof - dustin@smolen.law
Jack Warren - jack@smolen.law

*Attorneys for Plaintiff*

☐   I hereby certify that on _____ I served the attached document by United States Certified Mail, Return Receipt Requested on the following, who are not registered participants of the ECF System:

s/ Kent B. Rainey
Kent B. Rainey