**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JENNIFER SCOTT CALLAWAY, | ) | |
| As parent and next friend of D.C., | ) | |
| a minor child, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-cv-051-SLP |
| v. | ) | |
| | ) | |
| (1) INDEPENDENT SCHOOL DISTRICT | ) | |
| NO. 1 OF OKMULGEE COUNTY a/k/a | ) | |
| OKMULGEE PUBLIC SCHOOLS, | ) | |
| a Political Subdivision of the State of | ) | |
| Oklahoma; | ) | |
| (2) STEPHANIE LEE; and | ) | |
| (3) DALAWNA BRENT; | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS STEPHANIE LEE
AND DALAWNA BRENT'S MOTION TO DISMISS [DKT # 14]**

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/ John Warren
Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
John Warren, OBA #33635
611 S. Detroit Ave.
Tulsa, Oklahoma 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
laura@smolen.law
jack@smolen.law
*Attorneys for Plaintiff*

April 22, 2021

# TABLE OF CONTENTS

Table of Authority.................................................................................................................. iii

Introduction............................................................................................................................1

Summary of the Allegations ...................................................................................................2

Standard of Review.................................................................................................................6

Argument and Authority .........................................................................................................7

    I.    ***Plaintiff's Has Adequately Pled Fourteenth Amendment Claims Against the Individual Defendants***...........................................................8

        A.  The Individual Defendants Violated Plaintiff's Right to Equal Protection ................................................................................................8

            1.  Supervisory Liability .........................................................................15

        B.  State Created Danger ...........................................................................13

            1.  Personal Involvement..........................................................................14

            2.  Individual Defendants Took Affirmative Action..................................15

            3.  Defendants' Conduct, as Alleged, Manifests Such a Deliberate indifference to an Obvious Risk that it Shocks the Conscience ..........................................................................................16

        C.  The Individual Defendants are Not Entitled to Qualified Immunity ..............19

            1.  Underlying Constitutional Violation....................................................20

            2.  The Law was Clearly Established in September 2020........................20

    II.   ***Plaintiff is Not Seeking Claims Against the Individual Defendants Based on Violations of Section 504 and the ADA*** ..........................22

    III.  ***Punitive Damages*** .........................................................................22

Certificate of Mailing.............................................................................................................24

Page No.

Cases

*Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253,
(10th Cir. 1998)................................................................................................1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................6

*Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1999)....................................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................6

*Bonner v. Lewis*, 857 F.2d 559 (9th Cir. 1988)...............................................22

*Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2000) ...........................18

*Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008) .......................14

*Burke v. Regalado*, 835 F.3d 960 (10th Cir. 2019)........................................23

*Cillo v. City of Greenwood Village*, 739 F.3d 451 (10th Cir. 2013)...............19

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)...............8

*City of Canton v. Harris,* 489 U.S. 378 (1989)........................................ 9-10

*Clark v. Wilson*, 625 F.3d 686 (10th Cir. 2010) ............................................21

*Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001) ......................13, 16, 18, 22

*Daniels v. Williams,* 474 U.S. 327 (1986) ......................................................13

*DeShaney v. Winnebago County Dept. of Social Servs.,*
489 U.S. 189 (1989).........................................................................................13

*Dodds v. Richardson*, 614 F .3d 1185 (10th Cir. 2010)......................... 9-10, 20

*Duvall v. County of Kitsup*, 260 F.3d 1124 (9th Cir. 2001).............................22

*Eckert v. Town of Silverthorne*, 25 Fed. Appx. 679 (10th Cir. 2001)............11

*Farmer v. Brennan*, 511 U.S. 825 (1970) .......................................................11

*Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003)......21

*Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) ...................................................20

*Gallagher v. Shelton*, 587 F.3d 1063 (10th Cir. 2009) .................................................14

*Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202
(10th Cir. 2006).............................................................................................................8

*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011) ........................9

*Keith v. Koerner*, 707 F.3d 1185 (10th Cir. 2013).......................................................21

*Kerns v. Independent School Dist. No. 31 of Ottawa County*, 984
F.Supp.2d 1144 (10th Cir. 2013) ............................................................................. 16-17

*Khalik v. United Air Lines,* 671 F.3d 1188 (10th Cir. 2012) .........................................6

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).............................................11

*Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999).....................................................12

*Massachusetts Bay Ins. Co. v. Langager,* 2017 WL 35868621
(N.D. Okla. Aug. 18, 2017) ..........................................................................................20

*Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988).....................................................11

*Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836 (10th Cir. 2005)............................ 8-9

*Perez v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 432 F.3d
1163 (10th Cir. 2005).....................................................................................................16

*Peterson v. Jensen*, 371 F.3d 1199 (10th Cir. 2004)....................................................19

*Poore v. Glanz*, 2012 WL 728199 (N.D. Okla. Mar. 6, 2012) .......................................9

*Porro v. Barnes*, 624 F. 3d 1322 (10th Cir. 2010) .......................................................10

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)........................................... 13-14

*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009).............................20

*Schaefer v. Las Cruces Public School Dist.*, 716 F. Supp.2d 1052
(10th Cir. 2010).............................................................................................................12

*Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012) ...................................................19

*Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996) ..........................................................13

*Sutton v. Utah State School for Deaf and Blind*, 173 F.3d. 1226
(10th Cir. 1999) ..........................................................................................................15, 21

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) ......................................................6

*Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) ................................................11

*Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014) .......................................................19

*Willowbrook v. Olech*, 528 U.S. 562 (2000) ...............................................................8-9

*Uhlrig v. Harder*, 64 F.3d 567 (10th Cir. 1995) .....................................................14, 16

*United States v. Lanier,* 520 U.S. 259 (1997) ..............................................................20

*Vogt v. City of Hays, Kansas*, 2017 WL 34455 (10th Cir. Jan. 4, 2017) .....................5-6


Statutes

20 U.S.C.A. § 1401(a)(20) ..............................................................................................2

21 O.S. § 1171(B). ...........................................................................................................1

U.S. Const. Amend. XIV § 1. ........................................................................................13


Other Authority

Shapiro, Joseph, *The Sexual Assault Epidemic No One Talks About*, NPR, 01/08/2018,
https://www.npr.org/2018/01/08/570224090/the-sexual-assault-epidemic-no-one-
talksabout?utm_source=twitter.com&utm_medium=social&utm_campaign=npr&ut
m_term=nprnews&utm_content=20180108 (last accessed 04/20/21) ..........................23

**COMES NOW** the Plaintiff, Jennifer Scott Callaway, as Parent and Next friend of D.C., a minor child, and requests that the Court deny the *Motion to Dismiss* filed by Defendants Stephanie Lee and Dalawna Brent ("Individual Defendants"). In support, Plaintiff states the following:

## **INTRODUCTION**

This case arises as a result of a heartbreaking incident that occurred in September of 2020. D.C., a mentally disabled middle school student at OPS, was sexually victimized by an older student after the Defendants failed to provide necessary accommodations to D.C. in light of his disability. D.C. has a severe form of autism, which has resulted in substantial developmental limitations, including, but not limited to, limited ability to verbally communicate. Due to his disability, D.C. requires constant supervision while at school, including adult help and supervision "in all toileting activities." In September of 2020, OPS was short staffed, and rather than provide for additional staff and/or training, the Individual Defendants pulled D.C.'s individual aide from her duties supervising D.C. so that she could cover for the shortage of staff. As a result of losing his individual aide, the Defendants allowed D.C. to use a bathroom for much older students, completely unsupervised.

As a result, an older student took advantage of D.C. by photographing D.C.'s private body parts without D.C.'s knowledge or consent, a felony crime, while D.C. was using the restroom.[1] The student then proceeded to distribute the photograph to other students.

---

[1]     21 O.S. § 1171(B) makes it a felony to: "use[ ] ... video equipment in a clandestine manner for any illegal, illegitimate, prurient, lewd or lascivious purpose with the unlawful and willful intent to view, watch, gaze or look upon any person without the knowledge and consent of such person when the person viewed is in a place where there is a right to a reasonable expectation of privacy...." A violation of this statute is punishable by imprisonment in the State Penitentiary for a term of not more than five years, a fine not exceeding $5,000, or both. *Id.*

This case illustrates the worst nightmare of every parent of a mentally disabled child. Plaintiff trusted OPS to lookout for and protect D.C. in accordance with its duties pursuant to both federal and Oklahoma law. However, OPS completely abandoned its duty when it was inconvenient and failed to ensure that D.C.'s disability was properly accommodated, and failed to ensure that OPS staff were properly trained in supervising and protecting students with special needs like D.C.

Sadly, what happened to D.C. is all too common. A study done by the United States Department of Justice found that "people with intellectual disabilities — women and men — are the victims of sexual assaults at rates more than seven times those for people without disabilities."[2] Defendants' failure to protect and provide safety to D.C. resulted in devastating and traumatic consequences for him and his family.

## SUMMARY OF THE ALLEGATIONS

D.C. has autism, which has resulted in a number of substantial educational limitations, including, but not limited to, "severe receptive and expressive language disorder" which manifests in D.C. speaking no more than 2 to 3 words at a time. *See* Dkt. 2, ¶¶ 20-21, 34.

In 2016, upon D.C.'s initial enrollment at OPS, he was evaluated by the district and placed on a 100% Individualized Education Plan ("IEP"). *See* Dkt. 2, ¶ 22. An IEP consists of a written statement of the present educational level of the child, the annual goals, and short-term instructional objectives, and the "specific educational services to be provided to such child." 20 U.S.C.A. § 1401(a)(20). *See* Dkt. 2, ¶ 29.

In September of 2020, D.C.'s 2020-2021 IEP was finalized, with the help of a number of

---

[2]     Shapiro, Joseph, *The Sexual Assault Epidemic No One Wants to Talk About*, NPR, 01/08/2018, https://www.npr.org/2018/01/08/570224090/the-sexual-assault-epidemic-no-one-talksabout?utm_source=twitter.com&utm_medium=social&utm_campaign=npr&utm_term=nprnews&utm_content=20180108 (last accessed 04/20/21).

people, including Defendant Brent, who was the Special Education Director for OPS. *See* Dkt. #2, ¶ 32. The IEP included the requirement that D.C. "be attended by an adult aide to all locations in and around the school, as in during lunch, recess, and specials." *See* Dkt. 2, ¶ 35. In addition to the requirement that D.C. be accompanied by an aide around the school, the IEP required that D.C. "be attended by an adult aide in all toileting activities." *See* Dkt. 2, ¶ 37. The requirement of adult assistance in "all toileting activities" was a condition of D.C.'s IEP going back to his very first IEP in 2016. *See* Dkt. 2, ¶ 38.

During the 2020-2021 Defendant Stephanie Lee was the Principal of Dunbar and Defendant Brent was the Special Education Director for OPS. *See* Dkt. 2, ¶¶ 6-7. The Individual Defendants were responsible for ensuring the special education program provided to D.C. at Dunbar was properly implemented. *Id*. During the 2020-2021 school year D.C. was a fifth-grade student in the special education class at Dunbar taught by Sheila Nelson's. *See* Dkt. 2, ¶ 40. The special education classroom was located in the 7th and 8th grade hallway. *See* Dkt. 2, ¶ 41.

There were approximately eight (8) other special education students in the special education class with D.C during the 2020-2021 school year. The students were supervised by Ms. Nelson with the help of various aides. *See* Dkt. 2, ¶ 42. In September of 2020, Nelson was on an extended absence from school due to an injury. *See* Dkt. 2, ¶ 43. Despite Nelson's protracted absence, the Individual Defendants did not hire or provide another qualified special education teacher, but rather elected to have the special education aides, including Rochelle Pierson, cover for Ms. Nelson and supervise the special education students. *See* Dkt. 2, ¶ 44. Because of Ms. Nelson's absence and the Individual Defendants refusal to provide another qualified special needs teacher, there were just two aides in the special education classroom to supervise the eight special education students. *See* Dkt. 2, ¶ 45.

As a result of the lack of appropriate qualified staff to supervise the special education students, D.C. was allowed to use the bathroom in the 7th and 8th grade hallway, without an aide or adult supervision. *See* Dkt. 2, ¶ 46. While in the restroom, D.C. was confronted by a much older student, who took full advantage of the absence of an adult escort and photographed and recorded D.C.'s genitals while he was using the bathroom. *See* Dkt. 2, ¶ 47. After taking the photograph of D.C. using the restroom, the older student proceeded to share and/or distribute the photographs to other Dunbar students. *See* Dkt. 2, ¶ 48. The photograph of D.C. using the restroom was viewed by several Dunbar students. *See* Dkt. 2, ¶ 49.

Upon being notified of the photograph by a fellow student, Defendant Lee reached out to Plaintiff to inform her of the incident with D.C. in the 7th and 8th grade hallway. *See* Dkt. 2, ¶ 50. Plaintiff was told by OPS employees that the photos of D.C. had been deleted but Plaintiff has no evidence that the photographs of D.C. are not still in existence. *See* Dkt. 2, ¶ 53.

Concerned, Plaintiff asked OPS employees, including the Individual Defendants, about the legal ramifications for the student who committed the felony act, and about how OPS would ensure that D.C.'s needs were met going forward. Defendant Lee informed Plaintiff that she could not provide any substantive information but assured Plaintiff that the matter was being dealt with by the police. *See* Dkt. 2, ¶ 52. Plaintiff contacted the Okmulgee Police Department ("OPD") and was informed that because the Dunbar student who took the photograph of D.C. was Native American, there was nothing that OPD could do; criminal charges would have to be handled by the Tribe/FBI. *See* Dkt. 2, ¶ 54. Plaintiff then contacted the Tribal Police who informed her that the Tribe had no knowledge of the incident, as no one from OPS had contacted the tribal police to report the incident. *See* Dkt. 2 ¶ 55.

Not only did the Defendants allow D.C. to be in the vulnerable position with an older

student that led to him being photographed, but the Defendants offered Plaintiff and D.C. no assistance to help them cope with being a victim of sexual violence. *See* Dkt. 2, ¶ 56.

As a result, Plaintiff initiated the present action asserting a number of federal and state law claims against the Defendants. Pertinent to the present Motion, Plaintiff brings her claims against the Individual Defendants pursuant to 42 U.S.C. § 1983 based on allegations that the Individual Defendants were deliberately indifferent to D.C.'s constitutional rights guaranteed by Fourteenth Amendment to the United States Constitution.

The Individual Defendants have moved to dismiss all of Plaintiff's claims alleged against the Individual Defendants on a number of grounds, many of which are moot and will not be addressed by Plaintiff.[3] Germane to the present Motion, the Defendants argue that Plaintiff has failed to adequately plead a *prima facie* constitutional violation under a number of different theories.

As will be shown below, Plaintiff's Complaint contains thorough and specific allegations that the Individual Defendants were deliberately indifferent to D.C.'s constitutional rights through their promulgation and implementation of policies and procedures which included the failure to adequately staff the Dunbar special education classroom with employees who were qualified and capable of supervising special education students. *See* Dkt. # 2, at ¶¶ 56-63.

As set forth below, and pursuant to the analysis appropriate at the pleading stage, Plaintiff's Complaint satisfies the *Iqbal-Twombly* standard of pleading such that dismissal is not appropriate on any of the Plaintiff's claims.

---

[3]     Defendants have sought dismissal of Plaintiff's § 1983 claim under a number of theories that Plaintiff is not advancing. For instance, Plaintiff is not asserting § 1983 claims based on Title IX. Furthermore, Plaintiff is pursuing Section 504 and ADA claims against OPS, not the Individual Defendants.

<u>**STANDARD OF REVIEW**</u>

Federal pleading rules require only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose is to "give the defendant fair notice of what the …claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[4] A pleading states a claim for relief where the allegations, taken as true, set forth a claim that is "plausible on its face." *Id.* at 570. In making that determination, the Court must accept all well-pleaded allegations as true, even if doubtful, and must construe the allegations most favorably to the Plaintiff. *See, e.g., Massachusetts Bay Ins. Co. v. Langager,* 2017 WL 3586862, *1 (N.D. Okla. Aug. 18, 2017) (citing *Twombly,* 550 U.S. at 555). A claim is "facially plausible" if has "enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vogt v. City of Hays, Kansas*, 2017 WL 34455, *2 (10th Cir. Jan. 4, 2017), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'Asking for plausible grounds…does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Massachusetts Bay,* 2017 WL 3586862 at * 2, quoting *Twombly,* 550 U.S. at 556. A well-pleaded Complaint may proceed "'even if it strikes a savvy judge that actual proof of those facts is improbable and that recovery is very remote and unlikely.'" *Id.*, quoting *Twombly*, 550 U.S. at 556.

---

[4]    Following *Twombly*, there was discussion in the federal courts of whether the decision imposed a heightened pleading standard on plaintiffs. *See, e.g., Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012) (comparing cases) ("There is disagreement as to whether this new standard requires minimal change or whether it in fact requires a significantly heightened fact-pleading standard."). The Tenth Circuit has expressly ***rejected*** the argument that *Twombly* requires heightened fact pleading. *Id.* (emphasis added) citing *Iqbal*, 129 S.Ct. at 1950; *see also Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002). Rather than imposing a heightened standard, the Tenth Circuit has interpreted *Twombly* as "refining" notice pleading. *Id.,* citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

The allegations against the Defendants contained in the Plaintiff's Complaint easily meet this "plausibility" standard.

## ARGUMENT AND AUTHORITY

I. **PLAINTIFF HAS ADEQUATELY PLED FOURTEENTH AMENDMENT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS**

Plaintiff has brought constitutional claims pursuant to alleged Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 as a result of the Individual Defendants' failure to supervise D.C. which led to him being photographed without his consent. Plaintiff is entitled to liability under § 1983 *via* multiple legal theories.

As an initial matter, Defendants appear to confuse the nature of Plaintiff's claims. The Defendants devote great time to analyzing requirements for § 1983 claims based on Title IX. However, Plaintiff has not advanced such a claim. Rather, Plaintiff alleges the Individual Defendants violated D.C.'s rights secured by the Fourteenth Amendment pursuant to (1) an equal protection theory; and (2) a state created danger theory.

The Individual Defendants appear to materially misunderstand the Plaintiff's equal protection and state created danger claims. For instance, Defendants allege that Plaintiff's claims concern an alleged failure to comply with the provisions of D.C.'s IEP. *See* Dkt. #14 p. 4. That is simply not true. In fact, <u>none</u> of Plaintiff's claims are based on the Defendants' failure to adhere to D.C.'s IEP. Rather, Plaintiff's claims arise as a result of the Individual Defendants failure to ensure that the OPS special education classroom was adequately staffed with employees who were capable of supervising special education students. The fact that the Defendants failed to meet the requirements of D.C.'s IEP is relevant to the issues in this case, but Plaintiff's claims neither depend on, nor require analysis of, the sufficiency of the IEP.

### A. THE INDIVIDUAL DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION.

Plaintiff has brought claims against the Defendants for violations of S.L.'s right to equal protection. Plaintiff's equal protection claims against the Individual Defendants is based on their deliberate indifference in the promulgation and implementation of policies and procedures in their supervisory roles at OPS. They essentially abdicated their responsibility to ensure that the OPS special education classroom was adequately staffed with employees who were capable of supervising special education students and meeting their special needs.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff's equal protection claim is based on what courts have referred to as a class-of-one claim, which the United States Supreme Court has expressly recognized as the following:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. In so doing, we have explained that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To plead such a claim, the Tenth Circuit requires a showing that the "difference in treatment was without rational basis, that is, the government action was 'irrational and abusive,' [*Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1211 (10th Cir. 2006)], and 'wholly unrelated to any legitimate state activity,' [*Mimics, Inc. v. Vill.*

*of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005).]" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).

In her Complaint, Plaintiff alleges that D.C., as a special needs student, was not provided the same level of protection and accommodation that general students at OPS were afforded. *See* Dkt. 2, ¶ 86. While other students were provided an educational environment that was adequately staffed, D.C. and the other special needs students were not. *See* Dkt. 2, ¶ 43. As a result of the unequal protections provided to DC. he was left unsupervised and vulnerable.

### 1. SUPERVISORY LIABILITY

It is well-established that officials, such as Defendants Lee and Brent, "may be held *individually* liable for policies they promulgate, implement, or maintain that deprive persons of their federally protected rights." *Dodds v. Richardson*, 614 F .3d 1185, 1207 (10th Cir. 2010) (emphasis added). "To establish a claim of supervisory liability under § 1983, a plaintiff must plead and prove that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind [i.e., "deliberate indifference"] required to establish the alleged constitutional deprivation.'" *Poore v. Glanz*, 2012 WL 728199, *3 (N.D. Okla. Mar. 6, 2012) *quoting Dodds*, 614 F.3d at 1199.

Plaintiff alleges that the Individual Defendants are liable under § 1983 for their deliberate indifference in their supervisory roles at OPS for their promulgation and implementation of policies and procedures, to ensure that the OPS special education classroom was adequately staffed with employees who were capable of supervising special education students. Such theory of liability requires allegations that a defendant's "failure to train its employees in a relevant respect evidences a 'deliberate indifference'" to the rights of the students. *City of Canton v. Harris,* 489

U.S. 378, 389 (1989). Plaintiff alleges that the Defendants' failure to implement adequate policies and procedures and to properly supervise OPS staff was the moving force behind D.C.'s constitutional deprivations. *See* Dkt. 2, ¶¶ 83-85.

Specifically, in their supervisory roles, the Individual Defendants were responsible for ensuring that Dunbar staff were properly trained on how to supervise and accommodate special education students. The Individual Defendants were further responsible for ensuring that the special education class at Dunbar was fully staffed with qualified special education teachers. Finally, the Individual Defendants were responsible for ensuring that NNHS staff and students were aware of Court Orders that were entered to protect sexual assault victims and was responsible for advising students and staff on how to effectively provide sexual assault victims a safe

Contrary to Defendants' assertions relative to supervisory liability in § 1983 cases, personal involvement in an alleged constitutional violation does not require direct participation, because under § 1983, any official who causes a citizen to be deprived of his constitutional rights can also be held liable. *Dodds*, 614 F.3d at 1195. The Court in *Dodds* went on to clarify that "[p]ersonal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him." *Id. citing Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008).

Additionally, in *Porro v. Barnes*, 624 F. 3d 1322, 1327 (10th Cir. 2010), the court held that to maintain a failure to train claim against a supervisor under § 1983, the Plaintiff must demonstrate that the need for more or different training was so obvious, and that the inadequacy so likely to result in the violation of the Plaintiff's constitutional rights that the policymakers of the political subdivision can reasonably be said to be deliberately indifferent to the need for additional training.

Undoubtedly, it should have been glaringly apparent to the Individual Defendants that the special education classroom was understaffed in September of 2020. Moreover, it would have been obvious to the Individual Defendants that without further staff and further training of that staff, special education students, like D.C., were in serious danger and at risk of suffering violations of their constitutional rights .

Regarding the state of mind requirement, a supervisor may be imputed with constructive knowledge of their subordinates if the wrongful conduct is a highly predictable or plainly obvious consequence of a supervisor's inaction, such as when a supervisor fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. *Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1999). Actual notice of a subordinate's misconduct is not necessary to establish supervisory liability. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). Whether a supervisor had constructive knowledge of the potential for constitutional violations is a factual issue for the jury. *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001) *see also, Eckert v. Town of Silverthorne*, 25 Fed. Appx. 679, 690 (10th Cir. 2001).

Furthermore, an "official's knowledge of the risk need not be knowledge of a substantial risk to a particular inmate, or knowledge of the particular manner in which injury might occur." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) *citing Farmer v. Brennan*, 511 U.S. 825, 843 (1970). Nor must a defendant be aware of the "specific [individual] who eventually committed the assault ... and it does not matter whether the risk comes from a single source or multiple sources." Farmer, 511 U.S. at 843. Not to mention that the Defendants' knowledge as to whether they "had the requisite knowledge of a substantial risk is a question of fact...." *Farmer*, 511 U.S. at 842.

In *Schaefer v. Las Cruces Public School Dist.*, 716 F. Supp.2d 1052 (10th Cir. 2010) the

Court reasoned that:

> [I]n the Tenth Circuit, however, under some circumstances, sexual harassment by a third-party can subject a supervisor or municipality to liability for violation of the equal-protection clause—not for the harasser's conduct, per se, but for failure to take adequate steps to stop it. *See Murrell v. Sch. Dist. No. 1,* 186 F.3d at 1249–51. To establish supervisory liability, Plaintiff must prove that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011).

*Id*. at 1066. Plaintiff further alleges that in their role as supervisory officials at Dunbar, the

Individual Defendants had the duty to ensure that the special education classroom was adequately

staffed. In the context of a jail, the Tenth Circuit has held that a supervisor's "failure to provide

adequate staffing and monitoring of inmates constitutes a policy attributable to the county, and

that he was deliberately indifferent to conditions at the jail." *Lopez v. LeMaster*, 172 F.3d 756,

763 (10th Cir. 1999). Similar to the Court's logic in *Lopez*, the Defendants had an affirmative duty

to ensure that the special education classroom at Dunbar was adequately staffed with an

appropriate amount of staff to ensure the safety of disabled students.

Based on Plaintiff's well-pleaded facts, this Court can infer not only that the Individual

Defendants failed to train school aides on how to supervise special education students, and failed

to ensure that the special education class was fully staffed with trained personnel, but that this

failure was a result of the Individual Defendants' deliberate indifference to the constitutional rights

of students like D.C. Accordingly, Plaintiff should be permitted to proceed with her equal

protection claim against the Defendants and be given an opportunity to discover and present

evidence of the Defendants lack of training.

### B. STATE CREATED DANGER

In her Complaint, the Plaintiff has alleged that the Defendants' violated D.C.'s substantive due process rights by creating a dangerous situation whereby D.C. was left unsupervised resulting in D.C. being victimized by an older Dunbar student.

The Due Process Clause of the Fourteenth Amendment' provides that "no State shall... deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV § 1. The Clause has a substantive component "barring certain government actions regardless of the fairness of the procedures used to implement them," *Daniels v. Williams,* 474 U.S. 327, 331 (1986). The substantive due process clause prevents government officials "from abusing [their] power, or employing it as an instrument of oppression" *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189,196 (1989) (internal quotation marks omitted).

The "danger creation" theory is clearly established in the Tenth Circuit. *See Currier v. Doran*, 242 F.3d 905, 924 (10th Cir. 2001) *quoting Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998) ("In *Armijo* this court determined that 'danger creation jurisprudence was clearly established as a matter of law' by late 1994.")) see also *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996) ("[S]tate officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm.")

The Tenth Circuit articulated a six-point test to evaluate whether the state created danger theory applies:

> (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) *citing Ruiz v. McDonnell*, 299 F.3d at

1182--83). In their Motion to Dismiss [Dkt # 14], the Individual Defendants appear to dispute three

(3) of the above listed elements. Specifically, the Individual Defendants argue that (1) they were

not personally involved in the incident; (2) they did not take affirmative action to cause the danger;

and (3) the Defendants did not act with deliberate indifference that shocks the conscience.

### 1. PERSONAL INVOLVEMENT.

Defendants contend that they are not liable under a danger-creation theory because they

were not directly involved in the incident whereby D.C. was photographed in the bathroom.

However, § 1983 does not require *direct personal* participation in the actual injury for an

individual supervisor to be held liable. Defendants are correct that "[i]ndividual liability under §

1983 must be based on personal involvement in the alleged constitutional violation" and that

[t]here must be an affirmative link between the constitutional deprivation and either the

supervisor's personal participation, his exercise of control or direction, or his failure to

supervise." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). But that the "affirmative

link" need not be the direct personal participation that Defendants assert:

> Any official who 'causes' a citizen to be deprived of her constitutional rights can also be
> held liable. For liability under section 1983, direct participation is not necessary. *Any
> official who 'causes' a citizen to be deprived of her constitutional rights can also be held
> liable.* The requisite causal connection is satisfied if the defendant set in motion a series of
> events that the defendant knew or reasonably should have known would cause others to
> deprive the plaintiff of her constitutional rights."

*Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008), *quoting Snell v. Tunnell*, 920

F.2d 673, 700 (10th Cir. 1990) (emphasis added). The Tenth Circuit reaffirmed this point when it

held that "state officials can be liable for the acts of third parties where those officials 'created the

danger' that caused the harm." *Seamons*, 84 F.3d at 1236 *quoting Uhlrig v. Harder*, 64 F.3d 567,

572 (10th Cir.1995).

Defendants' direct involvement in the bathroom incident is not required for Plaintiff's danger creation claim; rather, it is their personal involvement in creating the danger that led to D.C.'s injury that gives rise to liability. Plaintiff has thoroughly alleged in her complaint that the Individual Defendants were personally involved in the constitutional injuries D.C. suffered through their failure to implement appropriate policies and procedures.

## 2. INDIVIDUAL DEFENDANTS TOOK AFFIRMATIVE ACTION.

The Tenth Circuit in *Sutton v. Utah State School for Deaf and Blind*, 173 F.3d. 1226, 1241 (10th Cir. 1999) held that that "the danger creation doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Id.* at 1238 (internal citations omitted).

Plaintiff alleges not only that the Defendants failed to properly supervise OPS staff and students, but also that the Individual Defendants took numerous affirmative actions that *increased* D.C.'s vulnerability to danger. Specifically, Plaintiff alleges that the Individual Defendants deliberately chose not to provide a substitute/interim special education teacher despite knowing that there was a need to do so. The danger D.C., a special needs student, encountered when he entered the 7th and 8th grade bathroom at Dunbar unsupervised, was caused solely by the Defendants' affirmative action of refusing to provide adequate staffing for special education students at Dunbar.

Defendants' failure to provide adequate staffing for the supervision of special needs students resulted in D.C. losing full access to his full-time aide, Rochelle Pierson. See Dkt # 2, ¶44. Because the Individual Defendants elected to have special education aides, like Rochelle Pierson, cover for Ms. Nelson while she was out, D.C. Ms. Pierson was unable to supervise D.C. and ensure his safety as she had been. Pertinent to this issue, the Tenth Circuit has held that "the

state can be liable when it affirmatively places private citizens in harm's way by removing what would otherwise be safety valves." *Currier,* 242 F.3d at 922. Rochelle Pierson was a safety valve for D.C. D.C. lost access to that safety valve because of the Individual Defendants' affirmative act of pulling Ms. Pierson from her full-time supervision of D.C. so that she could cover for the short-staffed special education class.

### 3. DEFENDANTS' CONDUCT, AS ALLEGED, MANIFESTS SUCH A DELIBERATE INDIFFERENCE TO AN OBVIOUS RISK THAT IT SHOCKS THE CONSCIENCE.

Defendants claim that Plaintiff cannot show that the Defendants' behavior shocks the conscious because her allegations against the Individual Defendants "center on the failure to follow the requirements of D.C.'s IEP." *See* Dkt. # 14 p.12. That is not true. Plaintiff's claims center on the Individual Defendants deliberate indifference in ensuring that the OPS special education classroom was staffed with an appropriate amount of properly trained employees.

In order for Plaintiff to demonstrate that Defendants' actions were "conscience shocking," she "must demonstrate a degree of outrageousness and a magnitude of potential of actual harm that is truly conscience shocking." *Uhlrig,* 64 F.3d at 575. "The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct." *Id.* at 574 (10th Cir. 1995). Whether specific conduct shocks the conscience is a question of law for the Court. *See Perez v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 432 F.3d 1163, 1168 n. 4 (10th Cir. 2005)

While the question of whether a defendant's action "shocks the conscience" is a question of law, a close examination of the evidence is required before such a determination can be made. *Kerns v. Independent School Dist. No. 31 of Ottawa County*, 984 F.Supp.2d 1144, 1151 (10th Cir. 2013). At the motion to dismiss stage, a plaintiff has not had the opportunity to develop evidence,

and accordingly, a dismissal based upon the failure to shock the conscience is disfavored. Certainly, it is reasonable to infer from Plaintiff's allegations that the Individual Defendants knowingly chose *not* to provide sufficient training and staffing to protect special needs students like D.C. because to do so would be inconvenient, and because the students would not be able to do anything about it or even understand the risk posed by Defendants' short-cutting.

People with disabilities are especially vulnerable because of their inability to speak out and advocate for themselves, due to their disabilities. In discussing the risk disabled persons face Nancy Thaler, a leading voice in disability advocacy, has stated that "[f]olks with intellectual disabilities are the perfect victim...[t]hey are people who often cannot speak or their speech is not well-developed. They are generally taught from childhood up to be compliant, to obey, to go along with people."[5]

The Court in *Kerns* summarized Tenth Circuit law surrounding this issue as follows:

> Although it is a question of law**, the question often turns on a close examination of evidence, including:** (1) the contextual facts, *see Armijo,* 159 F.3d at 1264 (affirming denial of summary judgment as to this element because the summary judgment evidence could "possibly be construed as conscience-shocking, depending on context as determined after a full trial"); (2) the particular environment in which the state action occurs, *see Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 850, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("Deliberate indifference that shocks in one environment may not be so patently *1152 egregious in another ...."); and (3) whether the state actor had time to deliberate or was acting under exigent circumstances, *see Green v. Post,* 574 F.3d 1294, 1303 (10th Cir.2009) (explaining that, where there is opportunity for reflection and "unhurried judgments," deliberate indifference to an extremely great risk of serious injury can shock the conscience); *Amrine v. Brooks,* 522 F.3d 823, 833–34 (8th Cir.2008) ("Where state officials have the opportunity to deliberate various alternatives prior to selecting a course of conduct, such action violates due process if it is done recklessly.") (internal quotations omitted); *Ireland v. Jefferson Cnty. Sheriff's Dep't,* 193 F.Supp.2d 1201, 1221 (D.Colo.2002) (addressing Rule 12(b)(6) motion to dismiss claims brought by student injured in Columbine shootings) (dismissing "danger-creation" claims against law enforcement based on absence of conscience-shocking behavior and reasoning, in part, that officers were

---

[5] Shapiro, *supra* note 1.

"faced with a volatile emergency situation the scope and nature of which was unknown and unprecedented").

*Kerns*, 984 F.Supp.2d. at 1151-1152.

D.C. is a severely handicapped student who has required a full-time aide while at school. Plaintiff and D.C. relied on special education aides to supervise and protect D.C. while at school. When Ms. Nelson left school for an extended absence, the Individual Defendants made the conscious decision to pull D.C.'s aide, Rochelle Pierson, away from D.C., so that she could cover for Ms. Nelson, and knowingly chose not to replace her with anyone else. That decision was not one that was made under exigent circumstances, there was no hurry in making that determination. The Individual Defendants made the knowing decision to remove D.C.'s protection and threw D.C. to the wolves, in the form of allowing him unsupervised in a middle school bathroom.[6] Particularly relevant to the Plaintiff's claims that the Individual Defendants conduct was conscious shocking is the fact that the Defendants had ample time to correct the danger that they created but did not do so.

On a motion to dismiss, the relevant question is whether the complaint alleges facts that "could be conscience shocking, depending, of course, on further context provided by discovery." *Currier*, 242 F.3d at 920 *see also Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008) *quoting Armijo*, 159 F.3d at 1264 ("Viewed in total, *Briggs* has described conduct that could be 'construed as conscience-shocking, depending on context' after the facts are fully developed."). While Defendants assert conclusory statements of the law in their *Motion*, Plaintiff has satisfied

---

[6]     The Tenth Circuit recognizes a difference between decisions made in emergency situations, which are given great deference by courts, and decisions (such as in this instance) made when the governmental actors have ample time to deliberate and plan. *Radecki v. Barela*, 146 F.3d 1227, 1231-32 (10th Cir. 1998). Accordingly, the standard that the Tenth Circuit applies in non-emergency situations when Plaintiffs allege danger creation is deliberate indifference. "Where the state actor has the luxury to truly deliberate about the decisions he or she is making, something less than unjustifiable intent to harm, such as calculated indifference, may suffice to shock the conscience." *Id.* at 1232.

her burden at this stage. At present, the Plaintiff's Complaint alleges facts whereby a reasonable jury could conclude that the Defendants affirmative actions were conscious shocking.

### C. THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The Defendants make a haphazard attempt to claim raise a qualified immunity defense in their *Motion to Dismiss*. The Defendants argue that they are entitled to qualified immunity based on their contention that the Defendants did not violate D.C.'s constitutional rights. Defendants' argument that they are entitled to qualified immunity is nothing but conclusory statements of the law without making any effort to tie the law into the specific facts of the present case

"[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013). When determining whether the Individual Defendants are entitled to qualified immunity at this stage, this Court must decide whether Plaintiff has "allege[d] sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (emphasis added). Here, Plaintiff has alleged "sufficient facts that show—when taken as true" that the Individual Defendants "plausibly violated [S.L.'s] constitutional rights, which were clearly established at the time of violation." *Id*.

The Individual Defendants make <u>no</u> argument that the law was not clearly established at the time period at issue, nor could they. The cases and authority setting forth the state-created danger doctrine were decided *well* before the events at issue took place.[7]

---

[7]    *See also Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). ("[Q]ualified immunity defenses are typically resolved at the summary judgment stage…."); *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) ("Asserting a qualified immunity defense via a Rule 12(b)(6) motion" -- as the Individual Defendants have here -- "subjects the defendant to a more challenging standard of review than would apply on summary judgment.")

### 1. UNDERLYING CONSTITUTIONAL VIOLATION

When discussing qualified immunity in the supervisory liability context the *Dodds* Court found facts sufficient to satisfy the first prong of the qualified immunity test where the evidence tended to show that the defendant there "may have deliberately enforced or actively maintained the policies" which caused the alleged Constitutional deprivation at issue. *Dodds*, 614 F .3d at 1203-04. As has been discussed at length above, the Plaintiff has more than sufficient facts to plausibly allege that the Defendants "may have deliberately enforced or actively maintained the policies" which caused the violations of D.C.'s Fourteenth Amendment rights. *See supra*.

### 2. THE LAW WAS CLEARLY ESTABLISHED IN SEPTEMBER 2020.

With regard to the second prong of the qualified immunity analysis, it is important to acknowledge the purpose of qualified immunity generally: Qualified immunity exists to "ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier,* 520 U.S. 259, 270 (1997) *citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (quotations omitted). However, there is no need that "the very action[s] in question [have] previously been held unlawful." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377- 78 (2009).

In determining whether a constitutional right is "clearly established" for the purposes of qualified immunity:

The Supreme Court has held "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted). As this court has pointed out, "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir.2007) (quotations omitted).

*Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

The Tenth Circuit has held that the failure by school personnel to train subordinates or to implement a policy to prevent sexual assaults is clearly established "as of February 1995." *Sutton,* 173 F.3d. at 1241. Similarly, in *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, (9th Cir. 2003), the court denied summary judgment to school administrators in a § 1983 case based upon evidence that the defendants failed to adequately train teachers, students, and campus monitors about policies prohibiting sexual harassment on sexual orientation and failed to follow policies against discrimination. *Id*. at 1136.

In evaluating the state of the law regarding a supervisor's duties to supervise their subordinates, looking to cases brought by inmates is extremely helpful, as the body of law in the context of supervisory liability claims is very well developed. For instance, in *Keith v. Koerner*, 707 F.3d 1185 (10th Cir. 2013), the Tenth Circuit affirmed the denial of qualified immunity of a prison official following sexual misconduct by an officer toward a female inmate who was participating in a vocational training program. *Id*. at 1187. In support of its denial of qualified immunity the Court reasoned that "structural policy problems" relating to "the vocational training program and the insufficient use of cameras to monitor inmates and staff" suggested that the warden disregarded a substantial risk of such abuse despite being aware of the problem." *Id*. at 1189.

In regard to the Plaintiff's danger creation theory, the Tenth Circuit has held that "a reasonable state official would have known in 1993 and 1994 that reckless, conscience shocking conduct that altered the status quo and placed a child at substantial risk of serious, immediate, and proximate harm was unconstitutional." *Currier*, 242 F.3d at 922. As has been shown above, the conduct alleged by the Individual Defendants, neglect society's most vulnerable and exposing them to real harm for *convenience,* can reasonably be said to shock the conscious.

Defendants are not entitled to qualified immunity on Plaintiff's supervisory liability theory. At a minimum, a jury could find a reasonable official in the Defendants' position, who had subjective knowledge of the dangers posed by the lack of adequate staffing in the special education classroom, would have been on fair notice that their conduct was unlawful.

## II.   PLAINTIFF IS NOT SEEKING CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS BASED VIOLATIONS OF SECTION 504 AND THE ADA

Plaintiff is not pursuing claims against the Individual Defendants for violations of Section 504 and the ADA. Plaintiff's Section 504 and ADA claims are being brought against OPS only. Of course, the actions of the Individual Defendants are relevant to the evaluation of Plaintiff's claims against OPS,[8] but Plaintiff is not seeking damages against the Individual Defendants for those claims.

## III.   PUNITIVE DAMAGES

Because Plaintiff is not pursing claims against the Individual Defendants based on Section 504 and the ADA, the Plaintiff agrees that punitive damages are not available against the Individual Defendants for those claims. However, Plaintiff is pursing punitive damages against the Individual

---

[8]      When a plaintiff brings a direct suit under section 504 and/or the ADA, a public entity is liable in *respondeat superior* for the acts of its employees. *Duvall v. County of Kitsup*, 260 F.3d 1124 (9th Cir. 2001); *see also Bonner v. Lewis*, 857 F.2d 559, 566 (9th Cir. 1988).

Defendants based on their violations of D.C.'s constitutional rights. The Tenth Circuit has recently held that a "supervisor may be assessed punitive damages for his or her conduct even when the supervisor is not directly involved in the subordinates' violations of an inmate's constitutional rights." *Burke v. Regalado*, 835 F.3d 960, 1039 (10th Cir. 2019). While Plaintiff agrees that her Section 504 and ADA claims do not serve as a basis for punitive damages, her constitutional claims do.

WHEREFORE, premises considered, Plaintiff prays the Court deny the Motion to Dismiss, Dkt. # 14, filed by the Individual Defendants.

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/ John Warren
Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
John Warren, OBA #33635
611 S. Detroit Ave.
Tulsa, Oklahoma 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
laura@smolen.law
jack@smolen.law
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the 22nd day of April, 2021, a true and correct copy of the above and foregoing document was submitted to the Clerk of Court using the ECF System for filing and transmittal of a notice of electronic filing to all attorneys of record in this case.

/s/ John Warren