## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

JENNIFER SCOTT CALLAWAY,     )
as parent and next friend of D.C.,  )
a minor child,                      )
                                   )
          Plaintiff,          )
                                   )
v.                              )        Case No. CIV-21-51-SLP
                                 )
INDEPENDENT SCHOOL DISTRICT   )
NO. 1 OF OKMULGEE COUNTY     )
a/k/a OKMULGEE PUBLIC SCHOOLS, )
a Political Subdivision of the       )
State of Oklahoma, et al.,        )
                                 )
          Defendants.       )

## O R D E R

Before the Court are two related motions.  First, Defendant Independent School District No. 1 of Okmulgee County ("the School District") filed a Partial Motion to Dismiss[1] with Combined Brief in Support filed by [Doc. No. 13], which is at issue, *see* Pl.'s Resp. [Doc. No. 20]; Def.'s Reply [Doc. No. 22].  Second, Defendants Stephanie Lee and Dalawna Brent ("the Individual Defendants") have jointly filed a Motion to Dismiss with Combined Brief in Support [Doc. No. 14], which is at issue, see Pl.'s Resp. [Doc. No. 21]; Def.'s Reply [Doc. No. 23].  For the following reasons, both motions are GRANTED.

---

[1] Although captioned as a "partial" motion to dismiss, the School District moved to dismiss all five counts asserted against it.  *See generally* [Doc. No. 13].  Neither party articulates what facts cause it to be a "partial" motion, and the Court can ascertain none aside from the omission of the claims against the Individual Defendants (which they separately moved on).  Thus, it is more accurately a full "Motion to Dismiss," and the Court considers it as such.

## I.     Background[2]

This lawsuit arises from an incident involving D.C., a minor.  At all relevant times, D.C. was enrolled as a fifth-grade student at Dunbar Intermediate School ("Dunbar"), which is within the School District.  D.C. has been diagnosed with Autism Spectrum Disorder, which causes a number of substantial educational limitations, including difficulty communicating verbally.  Specifically, D.C. struggles with a "'severe receptive and expressive language disorder' which manifests in D.C. speaking no more than 2 to 3 words at a time."  Compl. [Doc. No. 2] ¶ 34.  As a result, D.C. has been on an Individualized Education Plan ("IEP") pursuant to the Individuals with Disabilities Education Act ("IDEA") since enrolling in the School District as a kindergartener in 2016.  D.C. began his fifth-grade year at Dunbar during the 2020-2021 school year.  Dunbar enrolls fifth, sixth, seventh, and eighth grade students.

On September 10, 2020, D.C.'s mother met with several School District officials—including Defendant Dalawna Brent, the School District's Special Education Director—to review and finalize D.C.'s IEP for the upcoming school year.  As it had in previous years, D.C.'s IEP required an adult aide to accompany him in all school activities, including "all toileting activities."  *Id.* ¶ 37.  More specifically, the IEP stated that D.C. "requires adult attendance and some assistance with toileting" and "will ask to be taken to the restroom."

---

[2] The factual summary herein is taken from Plaintiff's Complaint [Doc. No. 2] and accepted as true for the purpose of deciding the Motions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Id.* ¶ 39.  Rochelle Pierson, a School District employee who had been D.C.'s aide in primary school, continued to serve as D.C.'s aide at Dunbar.

Special education teacher Shelia Nelson taught all of Dunbar's special education students, including D.C.[3]  At the time of the incident, however, Ms. Nelson "was on an extended absence from school due to an injury, leaving no teacher for the special education students."  Rather than replace Ms. Nelson with another special education teacher, the School District elected to have Ms. Pierson and one other special education aide "cover for Ms. Nelson and supervise the special education students."[4]  *Id.* ¶ 44.

As a result of this arrangement, D.C. was allowed to leave the classroom and use the restroom unattended during the school day on September 21, 2020.  The restroom, like the special education classroom, was located in the hallway used by the older seventh and eighth grade students.  One of these older students "confronted" D.C. in the restroom and subsequently "photographed and recorded D.C.'s genitals while he was using the bathroom."  *Id.* ¶ 47.  After the incident, the older student "share[d] and/or distribute[d] the photographs to other Dunbar students."  *Id.* ¶ 48.  Eventually, one of these other students alerted school officials about the photos.

Dunbar's principal, Defendant Stephanie Lee, called D.C.'s mother on September 30 to explain what had happened to D.C.  Plaintiff's mother immediately went to Dunbar

---

[3] Neither Ms. Pierson nor Ms. Nelson are party to this action.

[4] It is unclear whether Ms. Nelson had eight or nine students in her class.  *Compare* Compl. [Doc. No. 2] ¶ 42 ("[T]here were approximately eight ("8") other special education students in the special education class with D.C."), *with id.* ¶ 45 ("[T]here were just two adult aides in the special education classroom to supervise the eight special education students.").

to discuss the incident with school administrators and to take D.C. home. Though School District employees told D.C.'s mother that the photos of her son had been deleted, they could not provide proof of this statement. Defendant Lee told D.C.'s mother that she could not provide any substantive information about the incident because the police were handling the matter. When D.C.'s mother contacted the Okmulgee Police Department, she was told that tribal or federal authorities would need to handle the matter because the student who photographed D.C. was Native American. After the Okmulgee Police Department explained there was nothing more they could do, D.C.'s mother reached out to tribal police. The tribal police told her that they were unaware of the incident, and that no one from the School District had contacted them. Following the incident, the School District offered "limited or no assistance to help [D.C.] cope with being a victim of sexual violence." *Id.* ¶ 56.

Plaintiff filed suit against the School District and the Individual Defendants, asserting five causes of action: (1) negligence against the School District; (2) negligent hiring, training, supervision, and retention against the School District; (3) a violation of D.C.'s equal protection rights pursuant to 42 U.S.C. § 1983 against the School District and the Individual Defendants; (4) a violation of the Americans with Disabilities Act ("ADA") against the School District; and (5) a violation of § 504 of the Rehabilitation Act against the School District.[5]

---

[5] Though not clear from the Complaint, Plaintiff clarifies she "is not pursuing claims against the Individual Defendants for violations of Section 504 and the ADA." Resp. [Doc. No. 21].

The School District has moved to dismiss Plaintiff's federal claims pursuant to Rule 12(b)(1) and, in the alternative, all five claims pursuant to Rule 12(b)(6). The Individual Defendants have moved to dismiss Plaintiff's § 1983 claim against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    Governing Standard

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a court to dismiss a complaint for lack of subject matter jurisdiction. Motions to dismiss under Rule 12(b)(1) "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When considering a facial attack, as the Court does here, the Court accepts the factual allegations of the complaint as true. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n. 4 (10th Cir. 2015).

### B. Rule 12(b)(6)

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, requires a litigant to plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When analyzing a complaint under this standard, the Court first identifies "the allegations in the complaint that are not entitled to the assumption of truth,"—i.e., legal conclusions and bare assertions. *Id.* at 679–81. It then evaluates the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. Accordingly, "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). Although "Plaintiff is not required to set forth a prima facie case for each element, she is required to set forth plausible claims." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). "While '[s]pecific facts are not necessary,' some facts are." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Pleadings that do not allow for at least a "reasonable inference" of the legally relevant facts are insufficient. *Iqbal*, 556 U.S. at 678.

Further, regarding § 1983 claims, there is a "need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom").

III.    Discussion

    A. Exhaustion of Administrative Procedures

The School District argues the Court lacks jurisdiction over Plaintiff's federal claims because she did not first exhaust the IDEA's administrative procedures under 20 U.S.C. § 1415(l).  The Court addresses this challenge first because the Tenth Circuit has treated the IDEA's exhaustion requirement as jurisdictional.  *See Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 784–85 (10th Cir. 2013) (citing *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002)).  Thus, the initial inquiry is whether Plaintiff was required to exhaust her administrative remedies under IDEA.

This answer is found in a two-step framework set out in two recent Supreme Court cases: *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017) and *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023).[6]  "The former case asks whether the gravamen of the complaint alleges a denial of a free appropriate public education, and the latter case asks whether the relief sought is of the type the IDEA offers."  *Stevens ex rel. D.S. v. Berryhill Bd. of Educ.*, 710 F. Supp. 3d 1062, 1069 (N.D. Okla. 2024).  "If the answer to both is yes, administrative exhaustion under the IDEA is required." *Id.*

---

[6] Although *Luna Perez* was decided during the pendency of this action—and after the parties submitted their briefing on the instant Motions—its holding nevertheless controls here.  *See Harper v. Va. Dep't. of Tax'n.*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 462 F. App'x 785, 789 (10th Cir. 2012).

The parties dispute whether the Complaint alleges the denial of a "free appropriate public education"—commonly called a FAPE. However, the parties did not have the benefit of *Luna Perez* at the time they briefed this issue, and *Luna Perez*'s holding is dispositive here. The Complaint only seeks compensatory and punitive damages, Compl. [Doc. No. 2] at 18–19, relief the IDEA cannot provide. Thus, because the Complaint only seeks monetary damages, analysis under the *Fry* prong is unnecessary,[7] as the Complaint is not subject to the IDEA's exhaustion requirement pursuant to *Luna Perez*. *See Shefke ex rel. Doe v. Macomb Intermediate Sch. Dist.*, No. 22-1283, 2023 WL 3698219, at *2 (6th Cir. May 23, 2023) (unpublished) ("The parties dispute at length whether [the] complaint alleges the denial of a FAPE. But in light of *Perez*, we need not decide that question to resolve this appeal: the complaint seeks monetary damages only and thus, pursuant to Perez, is not subject to the IDEA's exhaustion requirement.").[8] Accordingly, under *Luna*

---

[7] Nevertheless, the Court does find that the denial of a FAPE appears to be a central component of Plaintiff's claims. For example, in support of her ADA claim, Plaintiff alleges the School District (1) "[f]ail[ed] to provide appropriate services and supports for D.C. to be able to safely attend school," (2) "failed to support and accommodate D.C.'s educational program to meet his needs as adequately as the needs of students without disabilities," and (3) "failed to reasonably accommodate D.C. because he needed ASD services to enjoy meaningful access to the benefits of a public education." Compl. [Doc. No. 2] ¶¶ 104–105. Similarly, Plaintiff's claim under § 504 of the Rehabilitation Act alleges that the School District "discriminated against D.C. by failing to adequately staff the special education classroom" and by failing to "provide D.C. the adult aide he is required, in violation of D.C.'s documented needs." Compl. [Doc. No. 2] ¶ 117. Plaintiff concludes the result of both claims is that the School District "altered D.C.'s education and subjected him to a hostile educational environment, and denied services, programs, and activities to D.C. that were full and equal to programs and activities provided to non-disabled persons." *Id.* ¶¶ 107, 121.

[8] The Tenth Circuit has not weighed in following *Luna Perez*'s publication. Accordingly, the Court relies on well-reasoned opinions from courts outside of this circuit for their persuasive value.

*Perez*, Plaintiff is excused from administrative exhaustion resulting in this Court having subject matter jurisdiction over Plaintiff's federal claims.

### B. Abandoned Claims and Claims Not Raised

Before turning to the substantive analysis, the Court first attempts to clarify the pending claims. Having difficulty discerning the exact claims asserted against them, Defendants moved to dismiss on numerous grounds. For example, the Individual Defendants asserted a defense of qualified immunity and also moved to dismiss the § 1983 claim for failure to state a claim under numerous theories including equal protection, substantive due process, and procedural due process. *See generally* [Doc. No. 14]. The School District, on the other hand, also moved to dismiss the claims under various theories, but appeared to only interpret the § 1983 claim against it as alleging municipal liability based on a violation of the Equal Protection Clause related to a "class of one" theory. [Doc. No. 13] at 10–14.

Plaintiff's Response to the Individual Defendants argues that "Defendants appear to confuse the nature of Plaintiff's claims" as they sought dismissal "under a number of theories that Plaintiff is not advancing." Resp. [Doc. No. 21] at 5, 7. Plaintiff goes on to say, "[f]or instance, Plaintiff is not asserting § 1983 claims based on Title IX." *Id.* at 5. Plaintiff states she only "alleges the Individual Defendants violated D.C.'s rights secured by the Fourteenth Amendment pursuant to (1) an equal protection theory; and (2) a state created danger theory." *Id.* at 7. Further, in her Response to the School District, Plaintiff includes a footnote stating, "[The School District] is also liable to Plaintiff under § 1983 under the state-created danger doctrine" but because the School District "has not

challenged Plaintiff's § 1983 claims under that doctrine [in the Motion to Dismiss]," Plaintiff did not substantively discuss that claim in that Response.  [Doc. No. 20] at 5, n.3.

Making matters more confusing, Plaintiff's Response briefs seem to abandon some claims and theories while simultaneously attempting to enlarge others, in an apparent bid to clarify and remedy perceived pleading defects.[9]  For example, the Court cannot clearly discern whether Plaintiff intended to bring an equal protection claim under one theory or under two separate theories: (1) a "class of one" theory related to the alleged staffing deficiencies in D.C.'s classroom as compared to the staffing in non-disabled classrooms; and/or (2) a gender-based discrimination theory stemming from sexual harassment.[10]

As to the factual nature giving rise to the claims, Plaintiff also states that Defendants "materially misunderstand" the basis for the Fourteenth Amendment claims, explaining that "none of Plaintiff's claims are based on the Defendant's failure to adhere to D.C.'s IEP" but rather, "Plaintiff's claims arise as a result of the Individual Defendants [*sic*] failure

_____

[9] To the extent Plaintiff's Response briefs attempt to add to or amend her claims or allegations, the Court declines to consider the same as they were not pleaded in the four corners of the Complaint. *Kearney v. Dimanna*, 195 F. App'x 717, 721 (10th Cir. 2006) ("It is well-established . . . that in determining whether to grant a motion to dismiss, the district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.") (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)).

[10] Both of Plaintiff's Response briefs affirmatively state that "Plaintiff's equal protection claim is based on what courts have referred to as a class-of-one claim . . . ."  [Doc. No. 21] at 13; [Doc. No. 20] at 22.  Yet, both Responses go on to argue in the same section that the Individual Defendants (and therefore, the School District) may be held liable under a supervisory liability theory "for the student-on-student harassment under § 1983" as it is "is indisputable that a student has a constitutional right to be free from physical abuse and harassment under the equal protection clause of the Fourteenth Amendment."  [Doc. No. 20] at 20–21 (citing *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1249 (10th Cir. 1999)); [Doc. No. 21] at 17 (citing *Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052 (D.N.M. 2010) which cites *Murrell*).  While Plaintiff cites to *Schaefer* and *Murrell*, neither case had "class of one" claims.

to ensure that the [School District's] special education classroom was adequately staffed with employees who were capable of supervising special education students." *Id.* (emphasis by Plaintiff). Curiously, this is in direct conflict with an allegation in the Complaint: "[School District] employees, including Defendants Lee and Brent, each violated D.C.'s right to equal access by failing to ensure that the special education classroom at Dunbar was adequately staffed *and by failing to ensure that the explicit requirements of D.C.'s IEP were being followed.*" [Doc. No. 2] ¶ 85 (emphasis added).

Under Fed. R. Civ. P. 8(a)(2), a complaint only requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and does not require the plaintiff to set forth legal theories. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014); *Zokari v. Gates*, 561 F.3d 1076, 1084 (10th Cir. 2009). However, "[d]istinct theories of liability generally are plead in separate counts." *Chandler v. HK Hosp., LLC*, No. CV 22-16 MV/KK, 2022 WL 17847658, at *3 (D.N.M. Dec. 22, 2022). This is because, in part, a complaint "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Zokari*, 561 F.3d at 1084 (quoting *Twombly*, 550 U.S. at 555); *Jaiyeola v. Garmin Int'l, Inc.*, No. 2:20-CV-2068-JWB-JPO, 2020 WL 4678378, at *3 (D. Kan. Aug. 12, 2020) ("[T]he purpose of organizing a complaint into separate counts is to place defendants on notice as to exactly what they are defending against, whether an entirely separate cause of action or alternative theories of recovery."); *cf. Bd. of Trs. of the Trucking Emps. of N. Jersey Welfare Fund, Inc. v. 160 E. 22nd St. Realty, LLC*, No. CV 15-889 (ES) (JAD), 2016 WL 4582046, at *8 (D.N.J. Sept. 2, 2016) (unreported) (stating, "[t]o the extent [the plaintiff seeks to hold the defendants] liable under [two different

theories], those theories must be pleaded in separate counts" and ordering the plaintiff to "re-plead" those claims in an amended complaint); *Chandler*, 2022 WL 17847658, at *3 (requiring the plaintiff to plead distinct legal theories of liability in separate counts as the inclusion of multiple theories under one count was "ambiguous and unnecessarily complicate[d]"). Further, where a plaintiff does not offer a legal theory in the complaint, "the Court will not create one for him." *Boersma v. Otte*, No. 23-CV-221-ABJ, 2024 WL 4251817, at *8 (D. Wyo. Aug. 21, 2024), *appeal dismissed,* No. 24-8064, 2025 WL 820923 (10th Cir. Jan. 6, 2025).

Here, the Court finds that to the extent Plaintiff failed to respond to, or affirmatively abandoned, claims or theories raised by Defendants in their Motions to Dismiss, the same are deemed waived.[11] As to what remains, the Court finds all five counts are pending against the School District, whereas only Count III is alleged against the Individual Defendants. Further, as to Count III against the Individual Defendants, Plaintiff has alleged (and sufficiently addressed in her Response briefs to avoid abandonment) three theories underlying this claim: (1) a violation of equal protection based on a "class of one" theory stemming from disparate treatment regarding staffing of D.C.'s classroom and that of

---

[11] *See Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014) ("Waiver is accomplished by intent, but forfeiture comes about through neglect."); *C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) (affirming district court's conclusion that plaintiff abandoned facial constitutional claim "by not addressing it in his response to [d]efendants' motion to dismiss"); *see also Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053-54 (7th Cir. 2019) (explaining that a complaint "can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint," such as "when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss").

"students without disabilities"; (2) a violation of equal protection based on a theory of supervisory liability stemming from gender-based discrimination in the form of sexual harassment by a peer student; and (3) a violation of substantive due process under a state-created danger theory.  Count III is asserted against the School District under a municipal liability theory pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

With this housekeeping complete, the Court can move forward with the substantive analysis.  The Court first takes up the Individual Defendants' arguments, followed by the School District's.

### C. Fourteenth Amendment Violations

Both the School District and the Individual Defendants move for dismissal of the § 1983 claim under Rule 12(b)(6).   The Individual Defendants argue for qualified immunity and additionally assert dismissal is proper because (1) the Individual Defendants were not directly involved in the incident and therefore cannot be subject to personal liability,[12] (2) Plaintiff fails to sufficiently plead the Individual Defendants are liable under a supervisory liability theory, and (3) Plaintiff has not met the burden required by a "class of one" equal protection claim. *Id.* at 14–17.

---

[12] "A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).  Personal liability "under § 1983 must be based on personal involvement in the alleged constitutional violation." *Id.* Here, the Complaint contains no allegations that the Individual Defendants were personally involved in the incident or violation.  Further, Plaintiff appears to concede she is not pursuing a personal liability theory, arguing instead that the "the Individual Defendants are liable under § 1983 for their deliberate indifference in their supervisory roles."  Resp. [Doc. No. 21] at 9–10.  Accordingly, to the extent Plaintiff intended to assert a personal liability theory (which is not entirely clear), that theory fails.

The qualified immunity defense provides the governing framework for the Court's analysis of Plaintiff's claims. *See Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022) ("[w]hen a § 1983 defendant raises qualified immunity . . . the burden shifts to the plaintiff to establish both prongs of the defense."); *see also Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) ("[w]here, as here, defendants moved for dismissal of § 1983 claims under Rule 12(b)(6) based on qualified immunity, there is a presumption that the defendant is immune from suit." (internal quotation marks and citation omitted)).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* (brackets and internal quotation marks omitted).

In resolving a motion to dismiss based on qualified immunity, courts evaluate (1) "whether the facts that a plaintiff has alleged make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Fisher Sand & Gravel, Co. v. Giron*, 465 F. App'x 774, 779 (10th Cir. 2012); *see also Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013). "The burden is on the plaintiff to prove both parts of this test." *Giron*, 465 F. App'x. at 779. "Courts have

14

discretion to decide the order in which they address these two prongs." *Roberts v. Winder*, 16 F.4th 1367, 1374 (10th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

As to the second prong, Plaintiff must identify "clearly established" law that would have notified Defendants their actions were unlawful. *See Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1202 n.3 (10th Cir. 2017). Plaintiff may show the law to be "clearly established" by citing an on-point Supreme Court or Tenth Circuit decision, or by showing "the clearly established weight of authority from other courts must have found the law to be" as Plaintiff maintains. *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (internal quotation marks and citation omitted). An on-point decision means the precedent is "particularized to the facts"—that it "involves materially similar facts" to the case at hand. *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotation marks and citations omitted)). In other words, on-point precedent cannot define a right at "a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). There does not have to be "a case directly on point, but existing precedent [nonetheless] must have placed the statutory or constitutional question beyond debate." *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021) (quoting *al-Kidd*, 563 U.S. at 741).

In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 580 U.S. 73, 79 (2017). "The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *Id.* (internal quotation marks and citations omitted). "[T]he defense of qualified immunity gives public officials the benefit of legal doubts." *Donovan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (internal quotation marks omitted). Thus, qualified immunity provides "ample room for mistaken judgments" and protects all but "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 314, 343 (1986).

Here, the Court will start with the first prong because of the overlap between the parties' Rule 12(b)(6) arguments and the requirement for Plaintiff to show the Individual Defendants violated a statutory or constitutional right.

### 1. Qualified Immunity

#### i.    *Substantive Due Process – State-Created Danger Theory*

In the context of injuries inflicted by private actors, the Supreme Court has explained: "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). "As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. Since *DeShaney*, the Tenth Circuit has

recognized two exceptions to the general rule that state actors are not liable for private violence: (1) the "special relationship doctrine"; and (2) the "danger creation" theory. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). Plaintiff asserts her claims against the School District and the Individual Defendants under the latter theory. [Doc. No. 20] at 5; [Doc. No. 21] at 13.

"Under the danger creation theory, state officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm." *Marino v. Mayger*, 118 F. App'x. 393, 401 (10th Cir. 2004) (quoting *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998)). The danger creation theory is a "narrow exception" that "applies only when a state actor 'affirmatively acts to create, or increases a plaintiff's vulnerability to, danger from private violence.'" *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)). "To invoke the danger-creation exception, a plaintiff must establish as a threshold matter (1) private violence, and (2) affirmative conduct on the part of the state in placing the plaintiff in danger." *Hernandez*, 734 F.3d at 1259; *see also Est. of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013). If these preconditions are met, a plaintiff must then satisfy all elements of a six-part test:

> (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003) (quoting *Gonzales v. City of Castle Rock*, 307 F.3d 1258, 1263 (10th Cir. 2002)).  Here, the Court does not proceed to the six-part test because the "affirmative conduct" precondition is not met.

A state created danger claim cannot proceed without an "affirmative act" or "affirmative conduct" by the state official.  *See, e.g.*, *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) (affirming dismissal of danger creation claims on a motion to dismiss because "plaintiffs cannot point to any affirmative actions by the defendants that created or increased the danger to the victims"); *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 920 (10th Cir. 2012) ("'affirmative conduct' is a necessary precondition to such application" (quoting *Graham*, 22 F.3d at 995)).  "The affirmative conduct requirement typically involves conduct imposing 'an immediate threat of harm, which by its nature has a limited range and duration,' and is 'directed at a discrete plaintiff rather than the public at large.'"  *Hernandez*, 734 F.3d at 1259 (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002)).  Inaction, an omission to act, or even nonfeasance cannot be the basis of a danger creation claim.  *Gillen*, 710 F.3d at 1173 ("Our precedents consistently conclude that mere negligence or inaction is not enough."); *Graham*, 22 F.3d at 995 ("alleged nonfeasance in the face of specific information which would mandate action does not invoke the protections of the Due Process Clause.").

Here, Plaintiff's allegations regarding the Individual Defendants are sparse.  In her Response, Plaintiff argues the Individual Defendants "deliberately chose not to provide a substitute/interim special education teacher despite knowing there was a need to do so."  Resp. [Doc. No. 21] at 20.  However, this allegation is not in the Complaint.  Instead, the

Complaint alleges the *School District* "elected" to have the aides cover for Ms. Nelson and does not identify the individual decision-maker. *Id.* ¶ 44. While Plaintiff alleges both administrators were "responsible for the education program to D.C. under an IEP," it is unclear what this encompasses. Compl. [Doc. No. 2] ¶¶ 6, 7. For example, Defendant Brent was on the "IEP team" that helped to review and finalize D.C.'s IEP. *Id.* at ¶ 32. But the Complaint does not allege that either Defendant Lee or Defendant Brent were responsible for hiring or staffing teachers or aides in the classrooms. This deficiency, alone, is fatal to Plaintiff's claim against the Individual Defendants.

However, assuming *arguendo* that the Individual Defendants were the decision-makers for staffing D.C.'s special education classroom, the allegations set forth by Plaintiff constitute, at most, a failure to act. For example, the Complaint does not allege that the failure to staff a replacement teacher was "directed at a discrete" party—a key characteristic of an "affirmative act." *Hernandez*, 734 F.3d at 1259. Plaintiff, however, argues that this failure to act could still rise to the requisite "affirmative action" necessary because D.C.'s aide was a "safety valve for D.C." that D.C. lost access to "because of the Individual Defendants' affirmative act of pulling Ms. Pierson from her full-time supervision of D.C. so that she could cover for the short-staffed special education class." [Doc. No. 21] at 16.

In support of this "safety valve" argument, Plaintiff cites to a single case—*Currier v. Doran.* 242 F.3d at 922. *Currier*, however, is distinguishable from the circumstances presented here. In *Currier v. Doran*, the court suggested that "the state can be liable when it affirmatively places private citizens in harm's way by removing what would otherwise

be safety valves" or by "cutt[ing] off potential sources of private aid." *Id.* at 922. In that case, the Tenth Circuit found affirmative conduct where a defendant social worker told the victims' mother to stop reporting abuse, even though the social worker had previously received reports indicating abuse. *Id.* at 910, 921–22. The court held that by discouraging reports of abuse, the caseworker "increased the children's vulnerability to [] abuse" and interfered with public protective services. *Id.* at 922. This factual backdrop is clearly different from the situation here where there is no indication that the Individual Defendants were aware of and ignored a history of harassment by the student that photographed D.C. (or any other student).

Thus, the Complaint fails to allege facts that would plausibly demonstrate that the Individual Defendants engaged in affirmative conduct that created or increased the danger to D.C. Because this precondition is not met, the inquiry ends here. Accordingly, Plaintiff has failed to assert a substantive due process violation by the Individual Defendants under the state-created danger doctrine.

### ii.    *Equal Protection – "Class of One"*

Plaintiff asserts a "class of one" equal protection claim against the Individual Defendants, alleging that D.C., as a special needs student, was subjected to "abuses" that "students without disabilities" were not due to Dunbar's special education classroom not being adequately staffed. [Doc. No. 2] ¶¶ 85-86. As discussed below, Plaintiff's Complaint fails to plausibly allege a "class of one" claim against the Individual Defendants.

"In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly

situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).   While equal protection claims typically arise from actions taken against certain protected classes, Plaintiff does not allege D.C. was part of a protected class.   Rather, Plaintiff seeks to proceed on a "class of one" theory "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

To succeed on a class of one theory, "a plaintiff must first establish that others, similarly situated in every material respect were treated differently."   *Id.* (internal quotations and citation omitted).  Then, the plaintiff must "show this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." *Id.*  This standard is objective—if there is a reasonable justification for the challenged action, the Court does not inquire into the government actor's actual motivations. *Id.*  Thus, this is an "exacting burden[]" because "it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable."  *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1213 (10th Cir. 2006).

Notably, the Tenth Circuit has taken a cautious approach in "class of one" cases, wary of "turning even quotidian exercises of government discretion into constitutional causes." *Jicarilla.*, 440 F.3d at 1209.  The Tenth Circuit's "circumspection in this regard

stems from the fact that when 'looking only at one individual there is no way to know whether the alleged difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive and largely subjective canvassing of all possible relevant factors.'" *A.M. v. Holmes*, 830 F.3d 1123, 1167 (10th Cir. 2016) (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213–14 (10th Cir. 2004)). "It is therefore imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the allegedly favored class." *Id.*

As the Individual Defendants observe, numerous district courts in this circuit have held that a "class of one" claim is not available in an educational setting.[13] [Doc. No. 14] at 26. Particularly applicable here, in *Mueting v. Unified Sch. Dist. No. 443*, the court analyzed—and rejected—a class of one claim asserted by a public school student who had autism and other disabilities. No. 2:24-CV-02381-HLT-BGS, 2025 WL 1311029 (D. Kan. May 6, 2025). The *Meuting* plaintiff sued the school district and two administrators, claiming they "intentionally treated [the student] differently from other similarly situated students . . . by failing to provide qualified and trained teachers and staff . . . ." *Id.* But unlike Plaintiff in this case who uses students "without disabilities" as the comparator group, [Doc. No. 2] ¶ 86, the *Meuting* plaintiff claimed unequal treatment as compared to

---

[13] *See e.g.*, *Mueting v. Unified Sch. Dist. No. 443*, No. 2:24-CV-02381-HLT-BGS, 2025 WL 1311029, at *5 (D. Kan. May 6, 2025) ("an educational dispute is not the ideal setting for a class-of-one theory"); *Coffman v. Hutchinson Cmty. Coll.*, 2019 WL 3093506, at *15 (D. Kan. 2018) (collecting cases); *see also Quarrie v. Wells*, 2019 WL 1466900, at *6 (D.N.M. 2019) (noting that *Coffman* "collect[ed] cases and [found] class-of-one claims plainly unavailable in the public education setting").

other disabled students who, according to that plaintiff, "had access to qualified [school] teachers and staff" when he did not. *Id.*

The court in *Meuting* ultimately agreed with its sister courts, declining to apply the class of one theory on the grounds that it "is not a good fit for the public-education setting . . . given [a student's] highly individualized characteristics and needs." Critically, the court reasoned that it "is not plausible that [the student's] treatment can meaningfully be compared to the treatment of other students with disabilities." Moreover, the *Mueting* court explained that even if it "presume[d] that a class-of-one theory were appropriate in this academic setting," the plaintiff failed to state an equal protection claim. This is because the plaintiff failed to "identify his comparators or explain in any way how they were 'similarly situated in every material respect'" which was "fatal to his equal protection claim." *Id.* Specifically, because the plaintiff did "not identif[y] another student who shares his characteristics," he did not meet the requirement to "identify a comparator who was treated differently," causing the court to conclude that the administrators were entitled to qualified immunity due to the failure to plead a viable constitutional violation. *Id.*

The Court agrees with the *Meuting* Court's analysis. However, while the Court agrees that an educational setting is likely not fertile ground for a "class of one" equal protection claim, the Court declines to go so far as to hold it is unavailable in this case. Instead, the Court finds that Plaintiff failed to state a claim for a class of one equal protection violation.

Again, Plaintiff's allegations against the two administrators are scant. She alleges the Individual Defendants "each violated D.C.'s right to equal access by failing to ensure

that the special education classroom at Dunbar was adequately staffed . . . ." [Doc. No. 2] ¶ 85.[14]  Plaintiff further alleges that "[s]tudents without disabilities were not subjected to the abuses D.C. was subjected to, as described herein." *Id.* ¶ 86.  "This difference in treatment was due, in whole or in part, to D.C.'s status as a student with disabilities and is unconstitutional." *Id.*

These allegations are fatal to Plaintiff's equal protection claim for several reasons. First, they "are not entitled to the assumption of truth because they are entirely conclusory." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).  Second, and most critically, the single sentence referencing "students without disabilities" is the only mention of the alleged comparator(s) in the Complaint.  No specific students without disabilities are identified, and the Complaint does not include a "specific and detailed account of the nature of the preferred treatment of the allegedly favored class." *Holmes*, 830 F.3d at 1167.  Plaintiff's Response on this issue contains only two sentences of analysis to explain the basis for why she has sufficiently pled her equal protection claim, and those two sentences cite the previously quoted paragraph 86 as well as paragraph 43.  [Doc. No. 20] at 21–22 ("While other students were provided an educational environment that was adequately staffed, D.C. and the other special needs students were not [citing ¶ 43]."  That paragraph, however, only

---

[14] As noted previously, despite the Complaint also referencing a failure to comply with D.C.'s IEP as a basis for the equal protection claim, Plaintiff's Response brief explicitly abandoned that theory. Resp. [Doc. No. 21] at 7 ("none of Plaintiff's claims are based on the Defendants' failure to adhere to D.C.'s IEP") (emphasis by Plaintiff).

alleges that D.C.'s special education teacher "was on an extended absence from school due to an injury, leaving no teacher for the special education students." [Doc. No. 2] ¶ 43.

Further, Plaintiff provides no explanation or legal authority as to how D.C.—a student on an IEP with an autism diagnosis and "substantial educational limitations"— could be "similarly situated in *all material respects*" to a student without disabilities. *Kansas Penn Gaming, LLC*, 656 F.3d at 1218. One court analyzing this issue declined to find other disabled students to be a proper comparator class to a student on an IEP given that, like here, "all of the students operated under their own IEPs, each of which addressed that particular student's different needs." *A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1254 (D. Colo. 2011) ("The different behavior, education, and care plans in place for the students in [a special education] class makes them not similarly situated for purposes of the showing an equal protection violation."). Thus, students not on an IEP at all are certainly not a proper comparator to D.C. in the circumstances presented here. Plaintiff has failed to state a class of one equal protection claim.

### iii.    *Equal Protection – Supervisory Liability*

Plaintiff also asserts an equal protection claim based on a supervisory liability theory, alleging the Individual Defendants exhibited "deliberate indifference to known sexual harassment" by "failing to ensure that the special education classroom at Dunbar was adequately staffed." [Doc. No. 2] ¶¶ 81, 85. A plaintiff bringing a cause of action for supervisory liability must show that there was an "affirmative link" between the supervisor and the constitutional violation. *George ex rel. Bradshaw v. Beaver Cnty.*, 32 F.4th 1246, 1255 (10th Cir. 2022). To show an "affirmative link" and establish supervisory liability, a

plaintiff must demonstrate: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.*; *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

The Tenth Circuit has held that, in some circumstances, sexual harassment by a third-party can subject an individual to supervisory liability for violation of the equal-protection clause—"not for the harasser's conduct, per se, but for failure to take adequate steps to stop it." *See Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249–51 (10th Cir. 1999) (discussing one student's sexual harassment of another and stating, a "supervisory employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment"). However, where the complained-of conduct occurred by a third-party rather than a state actor, a supervisor may only be held liable under § 1983 where the "supervisor or employer participates in or *consciously acquiesces* in sexual harassment by an outside third party . . . ." *Id.* (internal quotations and citations omitted) (emphasis in original). Critically, "'liability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant' and not upon mere negligence." *Id.* at 1251 (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)).

Further, the Tenth Circuit has emphasized that because § 1983 is a "vehicle[] for imposing personal liability on government officials," there is a "need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls*, 718 F.3d at

1225 (10th Cir. 2013). It is "insufficient" to contend that "defendants"—generally—infringed on a plaintiff's rights. *Id.* Rather, a plaintiff must take care to "make clear exactly *who* is alleged to have done *what* to *whom* . . . as distinguished from collective allegations." *Id.* (emphasis in original). This is doubly true in the context of supervisory liability where the Tenth Circuit mandated that this "particularized approach applies with full force when a plaintiff proceeds under a theory of supervisory liability." *Id.* This is because various officials "often have different powers and duties." *Id.* (citations and internal quotations omitted).

> As the Tenth Circuit succinctly explained:
>
> To make out [a] viable § 1983 [] claim[] *and* to overcome defendants' assertions of qualified immunity, plaintiffs here must establish that each defendant—whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility—caused a violation of plaintiffs' clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind. Plaintiffs must do more than show that their rights "were violated" or that "defendants," as a collective and undifferentiated whole, were responsible for those violations. They must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility, that violated their clearly established constitutional rights. Failure to make this showing both dooms plaintiffs' § 1983 [] claims and entitles defendants to qualified immunity.

*Pahls*, 718 F.3d at 1228 (10th Cir. 2013) (internal citations omitted).

Here, Plaintiff's Complaint is devoid of allegations that would support the claim for supervisory liability against the Individual Defendants based on the student-on-student sexual harassment of D.C. For example, Plaintiff's claim against the Individual Defendants is solely based on their alleged failure to "adequately staff" the special education classroom, but the Complaint lacks any allegation that the Individual Defendants were

27

responsible for hiring, staffing, or training special education teachers or aides.[15]  *See generally*, [Doc. No. 2].  And as with the substantive due process claim, Plaintiff's allegations that both Defendant Lee and Defendant Brent were "responsible for the education program provided to D.C. under an IEP" is insufficient, even taken in the light most favorable to the Plaintiff.  An individual could be responsible for "educating" or developing curriculum without being responsible for administrative tasks such as hiring or training.  Further, as pled in the Complaint, the Individual Defendants are apparently both *equally* responsible for the "education program" with no detail or allegations as to their individual roles, assignments, or decision-making authority.  This is simply not enough to meet the required pleading standards, especially for a § 1983 claim. *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (dismissing a § 1983 claim under supervisory liability where the plaintiff used "collective allegations" and "fail[ed] to isolate the allegedly unconstitutional acts of" each individual official).

To the extent Plaintiff alleges that the Individual Defendants "should have known" that D.C. would be sexually harassed or harmed if there were inadequate supervision and "failed to stop it," [Doc. No. 2] ¶¶ 81, 83, such a theory has been rejected by the Tenth Circuit.  *See Woodward*, 977 F.2d at 1399 ("[I]f a plaintiff merely shows that a supervisor

---

[15] While Plaintiff attempts to correct this deficiency in her Response, [Doc. No. 21] at 9, through alleging that the Individual Defendants were responsible for training staff on how to supervise special needs students, the Court declines to consider these allegations as they were not pleaded in the four corners of the Complaint. *Kearney*, 195 F. App'x. at 721 (10th Cir. 2006); *see also Daniels v. Indep. Sch. Dist. No. (0-001) of Oklahoma Cnty., Oklahoma*, No. CIV-17-974-R, 2018 WL 2145009, at *2 (W.D. Okla. May 9, 2018) ("The Court will not allow Plaintiff to expand the allegations in her Complaint through argument of counsel in a response brief." (citing *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002)).

'should have known' that a subordinate was violating someone's constitutional rights and it is not established that the supervisor actually had such knowledge, the plaintiff will not have established a deliberate, intentional act by the supervisor to violate constitutional rights. At most, the plaintiff will have established only that the supervisor was negligent in not observing what he should have seen.").

Here, there is no allegation that D.C. had been harassed before, that the student who harassed D.C. had a history of similar misconduct, or that the Individual Defendants were even aware of the staffing deficiencies in D.C.'s classroom. *See generally* [Doc. No. 2]. Accordingly, there is certainly nothing in the Complaint to suggest that Defendant Brent or Defendant Lee deliberately or intentionally acted to violate D.C.'s constitutional rights. *Woodward*, 977 F.2d at 1399. Similarly, there are no allegations that allow the Court to infer that either Defendant Lee or Defendant Brent "consciously acquiesced" to sexual harassment by a third-party student. *Murrell,* 186 F.3d at 1249–51. In fact, the Complaint seems to suggest the opposite, at least as it pertains to Defendant Lee, who called Plaintiff to inform her of the incident and promptly turned the matter over to the police. Compl. [Doc. No. 2] ¶ 50–52. While the Complaint recites that D.C. was injured due to the Individual Defendants' "deliberate indifference to his rights," such allegation is entirely conclusory and may be disregarded. *See Khalik*, 671 F.3d at 1193 (10th Cir. 2012); *see also Bixler*, 596 F.3d at 756 (10th Cir. 2010). Plaintiff has failed to state a claim against the Individual Defendants under a theory of supervisory liability. Accordingly, the Court finds that Plaintiff failed to state a claim against the Individual Defendants under Rule 12(b)(6) for a Fourteenth Amendment violation.

In conclusion, Plaintiff has not plausibly alleged any connection between Defendant Lee or Defendant Brent and a constitutional violation. Accordingly, Plaintiff has failed to overcome the Individual Defendants' qualified immunity defense. *Brown*, 662 F.3d at 1166; *Keith*, 707 F.3d at 1188 (10th Cir. 2013). Based on this conclusion, the Court need not address prong two of the qualified immunity analysis. *White v. Lucero*, 135 F.4th 1213, 1218 (10th Cir. 2025). Count III against the Individual Defendants is DISMISSED WITH PREJUDICE.[16]

## 2. Municipal Liability of School District

Plaintiff also asserts her § 1983 claim against the School District, alleging it "had unconstitutional customs or policies of allowing sexual assaults to occur to OPS special needs students." Compl. [Doc. No. 2] ¶ 93. Plaintiff further alleges that the School District's "policies and/or practices constituted disparate treatment of special needs students and had a disparate impact on special needs students." *Id.* ¶ 96. Specifically, these policies or customs posed "substantial risks to the health and safety of special needs students like D.C," and the School District's actions "evinced deliberate indifference to the serious needs of special needs students" and "deliberate indifference to D.C.'s right to equal protection under the Fourteenth Amendment. *Id.* ¶¶ 94–95, 98. The alleged policies and customs are: failing to train and hire teachers and aides for the special education classrooms, failing to respond to a need for training and supervision of agents that work

---

[16] *See, e.g.*, *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (instructing district court to dismiss based on qualified immunity "with prejudice"); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341–42 (10th Cir. 2000) (affirming district court order granting motion to dismiss with prejudice on qualified immunity grounds).

with students with disabilities, failing to ensure that all OPS employees followed students'
IEPs, and fostering "an atmosphere and a system of indifference to the needs of special
needs students like D.C." *Id.* ¶ 93.

In its Motion to Dismiss, the School District argues Plaintiff has not established
municipal liability as "Plaintiff has not demonstrated the alleged conduct was the result of
failure to provide appropriate training or implement policies." [Doc. No. 22] at 6. Further,
the School District argues that an "isolated incident does not sufficiently establish a
custom, policy or practice on the part of the School District." [Doc. No. 13] at 14.

"To establish municipal liability under § 1983, 'a plaintiff must show 1) the
existence of a municipal policy or custom, and 2) that there is a direct causal link between
the policy or custom and the injury alleged.'" *Meadows v. City of Oklahoma City*, 851 F.
App'x 127, 130 (10th Cir. 2021) (unpublished) (quoting *Hinton v. City of Elwood, Kan.*,
997 F.2d 774, 782 (10th Cir. 1993)). "In order to establish municipal, or in this case School
District, liability for sexual harassment under the Fourteenth Amendment, a plaintiff must
demonstrate that a state employee's discriminatory actions are representative of an official
policy or custom of the municipal institution, or are taken by an official with final policy
making authority." *Murrell*, 186 F.3d at 1249; *Whitson v. Bd. of Cnty. Comm'rs of Cnty.
of Sedgwick*, 106 F.4th 1063, 1066–67 (10th Cir. 2024).

So to avoid dismissal under Rule 12(b)(6), Plaintiff must allege sufficient facts to
plausibly demonstrate "(1) that a [School District] employee committed a constitutional
violation; and (2) that a [School District] policy or custom was the moving force behind
the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir.

31

2004); *see also Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998). The official policy "must be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by a municipality's officers." *Murrell*, 186 F.3d at 1249 (citations and internal quotations omitted). "Absent such an official policy, a municipality may also be held liable if the discriminatory practice is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* "Although the existence or nonexistence of such a policy, practice, or custom is a question of fact for the jury, it is not a fact that can be baldly asserted at the pleading stage." *Abila v. Funk*, No. CV 14-1002 JB/SMV, 2016 WL 9021834, at *17 (D.N.M. Dec. 14, 2016) (citations omitted).

As an initial matter—and dispositive here—the absence of a constitutional violation by the Individual Defendants precludes a finding of liability against the School District. *See Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 788 (10th Cir. 2013) (school district not liable under *Monell* because plaintiffs did not establish that any district employee committed a constitutional violation); *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1150 (10th Cir. 2020). This is true under each of the three theories alleged against the Individual Defendants.

Further, the court cannot infer any plausible claim that the Individual Defendants or any unnamed school officials[17] acted pursuant to a custom long accepted by

---

[17] At times, the Complaint alludes generally to other, unnamed School District employees. *See e.g.*, Compl. [Doc. No. 2] ¶ 97.

32

the School District or that there was widespread unconstitutional conduct in the School District that was so permanent and well settled as to constitute a custom or usage with the force of law. *See e.g.*, *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981) ("[T]he mere allegation of a single act of unconstitutional conduct by a municipal employee will not support the inference that such conduct was pursuant to official policies. On the other hand, where the plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion."). Accordingly, the School District is entitled to dismissal of Plaintiff's 42 U.S.C. § 1983 claim, and it is DISMISSED WITH PREJUDICE.[18]

### D. ADA Claim and Rehabilitation Act Claim

Plaintiff asserts claims against the School District for violations of Title II of the ADA and § 504 of the Rehabilitation Act. Given the substantial overlap in these claims, the Court analyzes them together. *See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) ("Because these provisions involve the same substantive standards, we analyze them together."); *Urban ex rel. Urban v. Jefferson Cnty. Sch. Dist. R–1,* 89 F.3d 720, 728 (10th Cir.1996) ("[W]e analyze [plaintiff's] ADA claim by reference to [S]ection 504's standards . . .").

"Title II of the ADA states, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

---

[18] Dismissal with prejudice is appropriate where "granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)).

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (quoting 42 U.S.C. § 12132). A plaintiff must plausibly allege: "(1) that he or she is a qualified individual with a disability; (2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Id.* (quoting *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)).

Section 504 of the Rehabilitation Act states: 'No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008) (quoting 29 U.S.C. § 794(a)). To state a claim under § 504, a plaintiff must plausibly allege "(1) plaintiff is handicapped under the Act; (2) [s]he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Id.* To prevail on their § 504 claim for compensatory damages, Plaintiff must prove intentional discrimination; however, intentional discrimination does not require proof of "personal animosity or ill will." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). Instead, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result

34

in a violation of federally protected rights." *Id.*; *see also A. J. T. by & through A. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. ---, 145 S. Ct. 1647, 1649 (2025).

Plaintiff's first basis for alleging these claims appears to stem from the denial of "ASD specific services." Specifically, Plaintiff alleges that the School District "failed to reasonably accommodate D.C. because he needed ASD services to enjoy meaningful access to the benefits of a public education, and [the School District was] on notice that he needed those ASD specific services but did not provide those services." Compl. [Doc. No. 2] ¶ 105. It is entirely unclear what "ASD specific services" refers to. The allegations related to the ADA claim only vaguely recite that the School District "denied services, programs and activities to D.C. that were full and equal to programs and activities provided to non-disabled persons." *Id.* ¶ 107. These allegations are not only vague, but they "are not entitled to the assumption of truth because they are entirely conclusory." *Khalik*, 671 F.3d at 1193 (10th Cir. 2012).

Setting aside those allegations, Plaintiff further alleges the School District discriminated against D.C. "by failing to adequately staff the special education classroom and not provide D.C. the adult aide he is required, in violation of D.C.'s documented needs." [Doc. No. 2] ¶ 117. Plaintiff's Response echoes the same, stating the School District failed to provide D.C. with "meaningful access to the bathroom" and "failed to provide the simple accommodation of providing an aide to accompany D.C. to the bathroom." Resp. [Doc. No. 20] at 26, 28. However, D.C. clearly had "access" to the bathroom, and the Complaint expressly states that the School District provided an aide to D.C. who was present the day of the incident. Compl. [Doc. No. 2] ¶¶ 36, 44–46.

Further, Plaintiff's argument that the School District's short staffing constitutes intentional discrimination is unavailing. Resp. [Doc. No. 20] at 26–27. Plaintiff devotes little explanation to establishing intentionality, concluding only that intent must exist because the School District was aware of D.C.'s IEP and he "was allowed to use the restroom without an aide." *Id.* The Court disagrees. Plaintiff has not plausibly alleged that any understaffing by the School District was the result of intentional discrimination against D.C. or other students with disabilities. Further, a single incident where D.C. attended the bathroom unsupervised and without his aide does not rise to the level of intentional discrimination. *Clark v. Las Cruces Pub. Sch. Dist.*, No. 10-CV-307 WJ/GBM, 2010 WL 11619179, at *4 (D.N.M. Sept. 22, 2010) (dismissing a § 504 claim "because a single instance in which a school district failed to comply with the terms of a student's IEP does not rise to the level of a violation of either the IDEA or the RA").

Plaintiff's second basis for her ADA and § 504 claims stems from peer-on-peer disability-based harassment. Resp. [Doc. No. 20] at 27–29. Both parties cite *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cnty., Okla.*, 960 F. Supp. 2d 1254, 1267 (N.D. Okla. 2013) for the five-part test that a plaintiff must satisfy in order to impose liability on a school district for disability-based student-on-student harassment: "(1) the plaintiff is an individual with a disability, (2) he or she was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment, (4) the defendant knew about the harassment, and (5) the defendant was deliberately indifferent to the harassment." *Id.* (citing *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 454 (6th Cir. 2008)).

The School District argues that Plaintiff cannot meet several of these elements, "namely that D.C. was harassed based on his disability, that the harassment was severe enough to alter the condition of D.C.'s education, and that School District personnel were aware of and deliberately indifferent to this disability-based harassment." Mot. [Doc. No. 13] at 26–27. Plaintiff's Response argues she "has alleged that D.C. was taken advantage of by an older student specifically because of his disability." [Doc. No. 13] at 20. The Complaint, however, contains no such allegation, and a citation to the Complaint is conspicuously absent after this sentence. Accordingly, the Court agrees with the School District that Plaintiff has failed to establish these elements and therefore, failed to state a claim for peer-on-peer disability-based harassment. Counts IV and V are DISMISSED WITH PREJUDICE.[19]

### E.  State Law Claims

Plaintiff's remaining claims are brought under Oklahoma state law. A district court has discretion to adjudicate the merits of the state-law claims when "the values of judicial economy, convenience, fairness, and comity" indicate that retaining jurisdiction over the state-law claims would be appropriate. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349−50 (1988); *see also* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over state law claims, where, as here, "the district court has dismissed all claims over which it has original jurisdiction."); *City of Chicago v.*

---

[19] *See N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1235 n.22 (10th Cir. 2021) (observing that "dismissal with prejudice is generally appropriate under Rule 12(b)(6) when amending the complaint would be futile").

*Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (emphasizing that district courts have significant discretion to decline supplemental jurisdiction); *VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1150 (10th Cir. 2017). But "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7.

After considering the relevant factors, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims. *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1314 (10th Cir. 2021) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011)); *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial."); *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (Resolution of Plaintiff's state law claims is "best left for a state court's determination."). Accordingly, Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

## IV.    Conclusion

IT IS THEREFORE ORDERED that Defendants Stephanie Lee and Dalawna Brent's Motion to Dismiss with Combined Brief in Support [Doc. No. 14] is GRANTED and Plaintiff's claims against Defendants Lee and Brent are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant Independent School District No. 1 of Okmulgee County's Partial Motion to Dismiss with Combined Brief in Support [Doc. No. 13] is GRANTED as to Plaintiff's claims arising under federal law—specifically Counts III, IV, and V—and those claims are DISMISSED WITH PREJUDICE. The Court DECLINES to exercise jurisdiction over the remaining state claims, so Counts I and II are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 11th day of July, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE